LOBRANO, Judge.
Ricky Verneuil (Verneuil), a Sewerage and Water Board (Board) foreman appeals a decision of the Civil Service Commission which affirmed his permanent dismissal.
Although the October 18, 1984 letter of dismissal states as reasons for his termination, (1) the unauthorized absence from his assigned route, (2) entry into Central Yard without following the proper check-in procedures and (3) attempt to remove a spool of steel cable from Central Yard without authorization, the Commission’s opinion is clear that their affirmance is based on the attempted removal of the spool of steel cable.
Verneuil argues to this court that the Commission’s findings áre not supported by the evidence, are arbitrary and clearly wrong, and that error was committed in failing to require the Board to honor a subpoena duces tecum.
The pertinent facts are as follows. On September 21, 1984, Verneuil, a utility maintenance supervisor, after completing a job on Frenchmen Street returned to the Central Yard with his driver and five man crew. Frederick L. Renz, one of Verneuil’s supervisors observed Verneuil and his crew pulling into the yard at approximately 4:30 p.m. Renz was informed by the security guard at the gate that Verneuil had not checked in with him, but merely slowed as he passed the gate. Renz found Verneuil and his crew parked behind Warehouse No. 1, in the rear of the Central Yard.
Renz testified that when he located Ver-neuil, he observed him rocking a spool of steel cable towards the edge of the loading dock. Verneuil’s truck was parked parallel to the side of the loading dock and it appeared to Renz that Verneuil was attempting to place the spool of cable in the truck. Renz testified he approached Verneuil and accused him of attempting to steal the cable. According to Renz, Verneuil’s response was “Bust me; do what you have to do.” Renz then ordered Verneuil back into the truck and to leave the yard immediately-
Verneuil’s version of what happened that day is somewhat different. He testified that upon completion of the Frenchmen Street job he returned to the Central Yard to get a set of sewer measurements for a job on Gallier Street that had just been called in. These measurements would show the location of property owners’ sewer cleanouts. He testified that he stopped at the main office, picked up the plans, and after getting back in the truck, asked the driver to stop behind warehouse No. 1 to allow him to urinate. While urinating, he heard a truck coming and jumped up on the loading dock to see who it was. He expressly denies even touching any steel cable, let alone attempting to rock the spool towards the truck. According to Verneuil he did not respond to Renz’s accusations by saying “Bust me; do what you have to do.” He merely stated he wasn’t stealing anything.
Besides that of Verneuil and Renz, the Commission had before it the testimony of *638 the five laborers who were seated in the rear of the truck, and that of the driver Leonard Moore. Basically, their testimony is that they knew nothing of the incident, did not see or hear anything and did not know the reason for their being in the yard. Generally they did agree that it would have been difficult but not impossible, to place a spool of cable in the rear of the truck. Only one of the laborers, Alex Samuels, claims to have heard Renz say “What are you stealing or What are you stealing now?” He never heard Verneuil say “Bust me; do what you have to do.” The driver, Moore, testified that Verneuil jumped out of the truck to urinate, that the engine was still running and therefore he could not overhear the conversation between Renz and Verneuil. There is some discrepancy in Moore’s testimony as to whether Verneuil called in to get the measurements on the Gallier Street job, or whether the job was radioed to him after completion of the Frenchmen Street job.
The hearing examiner made no recommendation to the Commission. The Commission concluded that a resolution of the case was based on the credibility of Ver-neuil and Renz. After a review of the testimony and evidence, Verneuil’s dismissal was affirmed for the reason of his attempt to remove a spool of cable from Central Yard without authorization. There are no Commission findings on the other charges.
A decision of the Civil Service Commission is subject to a review of both law and facts by the appellate courts. La. Const. Art. 10, Sec. 12. In reviewing the Commission’s findings of fact, the court should not reverse or modify such finding unless it is clearly wrong or manifestly erroneous. Walters v. Dept. of Police of New Orleans, 454 So.2d 106 (La.1984) In addition there is recent jurisprudence that points out “[wjhen hearings were conducted before a hearing examiner, courts have applied a less restrictive standard of review and have made an independent review of the record to determine whether the Commission was arbitrary, capricious or manifestly wrong.” Wollerson v. Dept. of Agriculture, 436 So.2d 1241 (La.App. 1st Cir.1983), at 1244, writs denied 441 So.2d 1221; See also, Jones v. New Orleans Public Belt R.R. Commission, 464 So.2d 919 (La.App. 4th Cir.1985) for a discussion of the manifest error rule where the lower court bases its decision on a record, not live testimony.
Verneuil argues that the appointing authority failed to carry its burden, and that the record as a whole does not support the Commission’s finding. We disagree.
The burden of proof is less in a Civil Service hearing than in a criminal proceeding, and although facts must be clearly established, they need not be established beyond a reasonable doubt. Savoie v. State, Dept. of Corrections, 394 So.2d 1285, (La.App. 1st Cir.1981). After a complete review of the record, and particularly the testimony of the two principals, Renz and Verneuil, we cannot say that the Commission’s findings are clearly wrong.
We conclude that Verneuil’s testimony is highly suspect. He testified he returned to the yard to pick up measurements for the Gallier Street job. The security guard’s log shows that truck 355 (Verneuil’s truck) passed the gate at 4:32 p.m. The dispatcher’s log show that the Sewerage & Water Board did not receive the complaint about Gallier Street until 4:32 p.m. Verneuil’s own logs, signed by him, shows he worked the Frenchmen Street job from 3:30 to 5 p.m., and the Gallier Street job from 5 to 7:30 p.m. No log time is shown for the stop at Central Yard. Furthermore the dispatcher’s log indicate that the Gallier Street job was first referred to an emergency man, then to Verneuil about 5:30 p.m.
The testimony of the laborers in Ver-neuil’s crew does little to substantiate his version of what happened that afternoon. They did not know why they returned to the yard, nor did they know why they were stopped at Warehouse No. 1. Verneuil’s explanations are suspect in view of the fact that there was a bathroom in the office where he supposedly stopped, although his *639 need to urinate at that particular spot is verified by the driver.
The Commission’s report concludes that the reason for Verneuil being at the yard does not coincide with the Board’s written records; why he would want to urinate in the back of the yard where there was a bathroom in the office he had just left gives one to pause; and his explanation for being on the warehouse loading dock leaves one skeptical. We find that the record sufficiently supports these conclusions, and that they are not clearly wrong.
Verneuil argues the Commission erred as a matter of law in not requiring the City to honor a subpoena to produce the spool of cable which was the subject of the attempted theft. The necessity for its production was to establish the size and weight thereof, and the improbability of Verneuil’s moving it. Although we agree in principle that the subpoena duces tecum should have been honored, there was more than sufficient testimony describing the physical features of the spool, as well as the probability of moving it. We therefore conclude that the error in not honoring the subpoena did not prejudice Verneuil, and was harmless.
Dismissal from permanent employment is the most extreme form of disciplinary action. Ryder v. Dept. of Health and Human Resources, 400 So.2d 1123 (La.App. 1st Cir.1981). In determining whether the punishment is commensurate with the infraction, a reviewing court should not modify the Commission’s order unless it is arbitrary, capricious, or an abuse of discretion. Verneuil admits, and the record is clear, that in 1983 he was suspended for 21 working days for stealing gasoline from the Sewerage and Water Board. Although that offense is immaterial and irrelevant in deciding the merits of the instant offense, it does have weight in the determination to dismiss Verneuil. We will not disturb the Commission’s order.
Accordingly the judgment of the Civil Service Commission is affirmed.
AFFIRMED.