620 So.2d 501 (1993)
Milton BARQUET
v.
DEPARTMENT OF WELFARE.
No. 92-CA-2635.
Court of Appeal of Louisiana, Fourth Circuit.
June 15, 1993.
*502 Rowena T. Jones, New Orleans Legal Assistance Corp., New Orleans, for plaintiff/appellant.
Ann M. Sico, Asst. City Atty., Elmer Gibbons, Deputy City Atty., Brett J. Prendergast, Chief of Civil Litigation, William D. Aaron, Jr., City Atty., New Orleans, for defendant/appellee.
Before SCHOTT, C.J., and BARRY and JONES, JJ.
BARRY, Judge.
Milton Barquet appeals a Civil Service Commission ruling which upholds his dismissal from the Department of Welfare. Barquet had been employed as a maintenance engineer for Touro-Shakespeare Home.
Barquet's dismissal arose because he was in a collision on March 1, 1991 wherein a City van he was driving was rear-ended. The appointing authority charged in its letter *503 of dismissal that Barquet failed to properly report the accident; he did not have a driver's license at the time of the accident; he did not follow his supervisor's instructions to report the accident; he failed to protect the City's property; he was dishonest as to the facts of the accident; and he consumed alcohol on duty. The alcohol charge was subsequently dropped.
Barquet lists four assignments of error:
(1) the Commission violated his right to due process and Louisiana Constitution Article X, Sec. 12(B) by considering the hearing examiner's report that was not revealed to the parties and was not included in the reviewable record on appeal;
(2) the appointing authority's suppression of evidence and the hearing examiner's prejudicial behavior during the hearing denied him a fair hearing;
(3) the appointing authority did not prove lawful cause for dismissal and also failed to prove that his dismissal was not motivated by illegal retaliation ("whistle blowing");
(4) alternatively, the penalty of termination should be modified to a lesser punishment.
At the Civil Service hearing, Barquet testified that he drove a day care patient home and was rear-ended by a truck. A coworker, Harold Jones, accompanied him. Barquet stated that damage to the van consisted of a broken tail light and a dent in the rear which he considered to be minor. He said that he spoke with the driver of the truck and exchanged names and phone numbers, and the driver did not have insurance. Barquet admitted that he did not wait for the police to arrive. He stated that he had a "temporary" driver's license.
Barquet testified that he went to see his supervisor, Paul Lumbi, immediately after the accident and gave him what he thought was the phone number of the driver. He later realized that he had given the wrong phone number.
The next day, pursuant to Lumbi's instructions, Barquet filed an accident report with the police. He admitted that he reported to the police that the other driver "fled the scene" because he assumed the driver gave a phony name and number. Barquet admitted that he contacted an attorney after the accident because he had been injured but decided not to file suit.
In an attempt to explain his "whistle blowing" allegations, Barquet stated that his main supervisor, Paul Lumbi, had placed an individual with a lower classification (Eric Weaver) in direct supervision of him and he reported this to Lisa Hudson in Administration. Ms. Hudson testified that she investigated and determined that there was no rule prohibiting a person with a lower classification from supervising a worker with a higher classification; however, she said it was a bad practice. She wrote a letter in September 1990 to Lumbi stating that the practice should cease. She said that Barquet informed her within a month that the situation was resolved. Barquet denied that the situation was resolved.
Barquet's co-worker and passenger on the day of the accident, Harold Jones, testified that after the accident he went to a nearby house to call Lumbi. Lumbi instructed him to call the police and for Barquet to wait until the police arrived. Jones called the police and returned to the scene. Jones stated that Barquet and the van were gone but that the truck was there. He saw Barquet in the van down the street blowing the horn. Barquet told him that the other driver had no insurance but that he made arrangements with him. Jones stated that he did not relate his conversation with Lumbi to Barquet.
Paul Lumbi, administrator of Touro-Shakespeare, testified that Barquet told him the accident was minor and that a police report was unnecessary. Lumbi informed him that City policy required that a police report be made. He said Barquet told him that the accident was a hit-andrun. Lumbi told Barquet that he did not believe him, and Barquet replied that he had spoken to the other driver (whose last name was Lewis) who had no insurance but provided a phone number and agreed to pay for the damage. Lumbi called the phone number to no avail. Lumbi also *504 stated that Barquet tried to claim that the tail light was broken before the accident.
Lumbi stated that the van's lessor, Lamarque Ford, refused to pay for repairs unless the driver of the van produced a valid driver's license. Barquet informed him that he did not have a valid driver's license because he "had something pending." Barquet later told Lumbi that he had a "temporary" license and produced a paper from traffic court indicating that he paid for violations and if there were no pending charges his license would be reinstated after payment of a fee.
Harold Dede, administrative assistant for the fiscal and personnel department, testified that he held a pre-termination hearing. He said Barquet told him that the other driver was James Trotter, not Lewis. Dede stated that he contacted traffic court and the Department of Public Safety and learned that the document did not permit Barquet to drive and he did not have a license at the time of the accident. Dede noted that all Civil Service employees are required to have a driver's license in case they have to drive a City vehicle.
Dede corroborated Lumbi's testimony that Lamarque Ford wanted the van returned immediately because Lamarque had been sued by Barquet under the uninsured motorist coverage based on a hit-and-run accident. Dede testified that the estimate of damage to the van was $1,068 and he submitted a copy. He noted that the City was responsible for the $500 deductible.
Barquet's attorney requested Dede to bring photographs of the van taken by Barquet to the hearing. Dede admitted that Barquet had given him the photographs, but stated that he left them at the front desk of his office. He claimed that he did not now know where the photographs were.
The case was reopened on June 10, 1992 because the hearing officer found that the circumstances surrounding the missing photographs warranted further testimony. Barquet testified that a secretary for the Department of Welfare, Mrs. Lachia Rodriguiz, found six of the ten photographs. She told him that they were on Dede's desk but she could not give them to him. Barquet stated that Dede told him he did not have the photographs. Ms. Rodriguiz testified that she found the photographs in the bottom of a filing cabinet and Dede instructed her not to speak to anyone about the photographs. Ms. Rodriguiz said that several months later a volunteer worker found the photographs in the bottom of a cabinet. The new supervisor, Carl Robinson, instructed her to place the photographs in an envelope with a note stating who found them and to whom they belonged. Robinson testified that he knew the photographs were a part of Barquet's appeal.
The six photographs showed dents in the rear of the van, blurred pictures of the inspection sticker, and damage on the driver's side door. Barquet stated that the pictures proved that there was damage to the van other than that caused by the accident. Barquet said (for the first time) that he left the scene because the inspection sticker had expired and he wanted to save the Department from embarrassment.
Barquet testified that the four missing photographs showed a close-up view of the damage on the rear of the van, a clearer picture of the expired inspection sticker, and two pictures of the damage to the side of the van.
The Civil Service Commission upheld Barquet's dismissal stating that Barquet had violated policy on reporting the accident, did not have a driver's license, failed to follow the instructions to stay at the scene of the accident, and was dishonest in reporting the facts. The Commission stated that the Welfare Department was guilty of neglect or a willful attempt to suppress evidence, but that the photographs contributed nothing to the case. The Commission found that Barquet's whistle-blowing claim was without merit.

LAW
A permanent classified City Civil Service employee cannot be subjected to disciplinary action except for cause expressed in writing. He or she may appeal from such *505 disciplinary action to the City Civil Service Commission and the appointing authority has the burden of proof as to the facts. Louisiana Constitution Article X, Sec. 8. The Commission's decision is subject to review on any question of law or fact upon appeal to the Court of Appeal. Louisiana Constitution Article X, Sec. 12(B).
The Commission has a duty to decide whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment is commensurate with the dereliction. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990).
Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino, 558 So.2d at 1315. The appointing authority must prove by a preponderance of the evidence the occurrence of the complained of activity and that the conduct impaired the efficient operation of the public service. Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983); Cittadino, 558 So.2d at 1315.
Although facts in a Civil Service hearing must be clearly established, they need not be established beyond a reasonable doubt as in a criminal trial. Lombas v. Department of Police, 467 So.2d 1273, 1277 (La.App. 4th Cir.1985), writ denied, 470 So.2d 120 (La.1985).
The usual rules of evidence do not apply in administrative hearings. Hearsay is admissible; however, the findings of the Commission must be based on competent evidence. Incompetent evidence will be disregarded by the appellate court. Cittadino, 558 So.2d at 1315.
When reviewing the Commission's findings of fact, an appellate court should not reverse or modify a finding unless it is manifestly erroneous.
In judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this Court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion.
Walters v. Department of Police of the City of New Orleans, 454 So.2d 106, 114 (La.1984).
When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Virgil v. American Guaranty and Liability Insurance Company, 507 So.2d 825 (La.1987). When there are two permissible views of evidence, the fact finder's choice cannot be manifestly erroneous. Goins v. Department of Police, 570 So.2d 93, 95 (La.App. 4th Cir.1990).

HEARING EXAMINER'S REPORT
Barquet claims that the Commission violated his right to due process and Louisiana Constitution Article X, Sec. 12(B) by utilizing the hearing examiner's report but did not provide a copy to the parties. The hearing examiner's report is not in the record. Barquet points out that the Commission, according to its rules, considered a "secret" report prepared by one or both hearing examiners which contained proposed findings of fact, credibility assessments and a recommendation.
Civil Service Rule II, Sec. 4.16 states in part:
... In the event the hearing has been held before a Hearing Officer or Referee appointed by the Commission, the ninety (90) day period [in which to decide an appeal to the Commission] shall begin to run upon receipt by the Commission of the Hearing Officer's report and official transcript of the testimony of said hearing. (Emphasis added).
At the time of Barquet's hearing that was the only Civil Service Rule which mentioned the hearing examiner's report. Rule II, Sec. 4.13 stated:
An official transcript of employee appeal hearings shall be made by the Court Reporter appointed by the Civil Service Commission and only this transcript and accompanying exhibits shall constitute the complete and official record of said hearings. (Emphasis added).
*506 Rule II, Sec. 4.13 was amended after Barquet filed this appeal. The amended rule now includes the hearing examiner's report in the official record.
Failure to provide a copy of the hearing examiner's report to the parties clearly violated Barquet's right to due process. Barquet also claims prejudicial behavior on the part of the hearing officer. The hearing examiner heard the witnesses, not the Commission, thus the hearing examiner's written report carried great weight with the Commission.
A copy of the hearing examiner's report shall be a part of the record and be provided to all parties in a reasonable time prior to a decision by the Commission.

FAIRNESS OF THE HEARING
Barquet claims he was denied a fair hearing due to the appointing authority's suppression of the photographs and the hearing examiner's prejudicial behavior.
We agree with the Commission that the appointing authority's actions in suppressing the photographs or in negligently "losing" them was inexcusable. However, the accident was not Barquet's fault and the amount of damage to the van is inconsequential. Barquet's claim on rehearing that he left the scene because the inspection sticker had expired and he wanted to save the Department from embarrassment did not impress the Commission. Thus, a photograph of the damage to the van and the expired sticker are irrelevant.
Barquet complains that the hearing examiner made prejudicial comments:
HEARING EXAMINER:
Well I want to know if Mr. Barquet made an uninsured motorist claim? That is what I want to know. I'm going to ask him, myself, if you don't ask him. If he did, that indicates he is lying, again.
MS. JONES:
I object, for the record.
HEARING EXAMINER:
I don't care if you object or not, Ms. Jones. It is a fact. The man said that he knew where the man was, he knew his telephone number, knew his address, he was going to see him, and yet he fileshe said it was a hit-and-run report with the police. That fact was brought out in the disciplinary letter. That has not been shown yet by testimony that he made an uninsured motorist claim, which means you can't locate the person that hit you. Now that is aI don't care what you want to call it but that looks like an untruth to me. And that is a serious charge.
Later the hearing officer said:
HEARING EXAMINER:
He already testified that they were not there. I'm telling you, frankly, Mr. Barquet, I have never heard the likes of the story like this in my life. You just testified five minutes ago that you looked at it and there wasn't anything there, and now you are going to open it up to get documents out that you know are not there? It is incredible, Mr. Barquet. Incredible.
* * *
HEARING EXAMINER:
That doesn't make any sense, Counsel. I'll tell you the truth, it doesn't make any sense at all. I really mean it. Now look, I want some straight answers, cap. I really do. I need some, Mr. Barquet. You can write down that I called him Cap, Counsel. I know you probably don't like that word. You're not making any sense. Everything you say contradicts yourself. You say there were no documents in the van, then you say you go there
MR. BARQUET:
Right.
HEARING EXAMINER:
You say you go down to the police station and you call them up. You don't do that. You either call them up or you go down. One or the other. You don't do both. Now listen to me carefully, because you are contradicting yourself right and left in this testimony. Do you realize you are doing it?
* * *
*507 Barquet cites Boudreaux v. Chief Administrative Office, 436 So.2d 663 (La. App. 4th Cir.1983) for the proposition that a hearing examiner's comments may, in certain circumstances, result in the denial of a fair hearing. The hearing examiner has the power to make recommendations which are rarely rejected by the Commission. His authority amounts to de facto status with the Commission.
The hearing examiner's comments were inappropriate and can be construed as badgering. The comments, combined with the absence of the hearing examiner's report, was prejudicial.

LAWFUL CAUSE FOR DISCIPLINARY ACTION
Although Barquet's hearing was unfair, the record is sufficiently complete to review the merits of his claim. We find that there was lawful cause for disciplinary action, but the facts do not support termination.
The testimony of Barquet and other witnesses leads us to the conclusion that Barquet was untruthful. He stated to the police and his supervisor that the accident was a hit-and-run, but later said he knew the man and he had no insurance. He gave Lumbi an incorrect phone number. It was not until the pre-termination hearing that Barquet revealed the name of the driver. He left the scene and did not make a police report. Barquet misled his supervisor about his driver's license. Barquet also contacted an attorney who wrote a letter to Lamarque Ford indicating that Barquet was injured in the van by a hit-and-run driver. Lamarque Ford refused to pay for the damage because Barquet did not have a driver's license.
Barquet's actions and inconsistencies impeded the efficient operation of the Department of Welfare; thus, the appointing authority had legal cause to discipline Barquet.

TERMINATION
When judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious or characterized by an abuse of discretion. Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984). Dismissal from permanent employment is the most extreme form of disciplinary action. Verneuil v. Sewerage and Water Board, 485 So.2d 636, 639 (La.App. 4th Cir.1986), writ denied, 489 So.2d 921 (La.1986).
Barquet's actions showed poor judgment; however, considering all of the facts the severe penalty of termination is not commensurate with his minor infractions.
IT IS ORDERED that the termination be reduced to suspension for 120 days. Barquet is to be reinstated with back pay and all emoluments from the end of the 120 day period.
AMENDED; AFFIRMED AS AMENDED.
SCHOTT, C.J., concurs.
SCHOTT, Chief Judge, concurring:
I do not subscribe to this view that the comments of the hearing examiner amounted to intimidation or badgering. The transcript as a whole demonstrates that the hearing examiner had to take a firm hand in order to keep order during the hearing and to preserve the integrity and clarity of the record of the proceedings in the face of repeated inconsistencies and contradictions during appellant's testimony and his counsel's aggressive and determined advocacy.
The penalty of dismissal from the service was inappropriate and excessive. Appellant's regular duties did not entail driving at all. A combination of unusual circumstances occurred to bring him to the point where he was in trouble with his supervisor, Mr. Lumbi. A patient at the home got sick and had to be driven home. The regular driver was absent. Lumbi told appellant to drive the City van rather than his own vehicle. There is a question as to whether appellant had a valid license at all, but we know he didn't have it with him. But he would not have been driving at all except for these fortuitous circumstances. The accident was clearly not his fault.
*508 What happened next was the result of appellant's poor judgment, if not stupidity. Certainly he should have waited for the police to investigate the accident and certainly he should have been entirely truthful with Lumbi. Obviously appellant's driving record was so bad that this additional accident was bound to cause more trouble for him. Consequently, his conduct is partially explained as an attempt to avoid being charged with at least one additional offense of driving without a license. While he must answer for his own misconduct his guilt is mitigated by the fact that Lumbi contributed to the problem by having him drive the patient home in the City van without having the foggiest notion of appellant's ability or authorization to drive or his knowledge of city policies or the likelihood that appellant would act responsibly if faced with an accident.
Appellant had been employed by the City for ten years. There is no evidence that he was ever disciplined for any kind of misconduct before this incident. Considering these factors along with the facts that his misconduct was more due to ignorance on his part than culpability, that his own supervisor played a great part in bringing this upon him, and that driving with its related responsibilities had nothing to do with his regular job, dismissal from the service is not warranted and the suspension of 120 days is quite appropriate.