968 So.2d 731 (2007)
Eddie FULLER c/w Wanda Newsome
v.
DEPARTMENT OF FIRE.
No. 2007-CA-0369.
Court of Appeal of Louisiana, Fourth Circuit.
September 19, 2007.
*732 Louis L. Robein, Jr., Robein, Urann & Lurye, Metairie, LA, for Plaintiff/Appellant.
Penya Moses-Fields, City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, Victor L. Papai, Jr., Assistant City Attorney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD).
DAVID S. GORBATY, Judge.
Appellants Eddie Fuller and Wanda Newsome, New Orleans Fire Department (NOFD) employees, each appeal the denial of their appeals to the Civil Service Commission.[1] For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY:
Ms. Newsome is a dispatcher with the NOFD. She was on vacation at the time Hurricane Katrina struck the New Orleans area. She evacuated with her daughter and grandson to Atlanta. Ms. Newsome was scheduled to return to work on September 14, 2005, but did not return until September 29.
Mr. Fuller was on duty at the time the hurricane struck. His firehouse flooded, and he was evacuated to Delgado Community *733 College, then to Baton Rouge. He did not return to work until September 30.
The NOFD determined that September 22, 2005, was the last date on which an employee could return after the storm without disciplinary action being taken. The return date was to apply to all employees across the board. Both Ms. Newsome and Mr. Fuller appeared before a Peer Review Board for possible disciplinary action following their return to work. The Board found the pair guilty of violating department rules and regulations. Following the Board review, Charles Parent, the Superintendent of Fire, reviewed the cases to impose disciplinary penalties; Mr. Fuller was suspended for 60 days and Ms. Newsome was suspended for 30 days for taking unauthorized leave.
The suspensions were appealed to the Civil Service Commission. The Commission affirmed the suspension finding that the September 22 return date was reasonable and was imposed uniformly on all fire department personnel.
These appeals followed.
LAW AND ANALYSIS:
A permanent classified Civil Service employee may not be disciplined except for cause expressed in writing. La. Const. art. 10, § 8(A); Walters v. Dept. of Police, 454 So.2d 106 (La.1984); Cittadino v. Dept. of Police, 558 So.2d 1311, 1314 (La. App. 4 Cir.1990).
The courts have established guidelines for the Commission and courts of appeal to utilize in applying the constitutional principles. First, the requisite "cause" for the discipline of an employee who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. Leggett v. Northwestern State College, 242 La. 927, 938, 140 So.2d 5, 9-10 (1962); Brickman v. New Orleans Aviation Bd., 236 La. 143, 159-60, 107 So.2d 422, 429 (1958); Jais v. Dept. of Finance, 228 La. 399, 401, 82 So.2d 689, 690 (1955); Gervais v. New Orleans Dept. of Police, 226 La. 782, 787, 77 So.2d 393, 394-95 (1955).
Second, the jurisprudence has instructed that "[t]he appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause." Whitaker v. New Orleans Police Dept., 03-0512, p. 5 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 575 (citing Joseph v. Dept. of Health, 389 So.2d 739, 741 (La.App. 4 Cir.1980)). Additionally, courts have held that "[t]he Commission is not charged with such operation or such disciplining." Whitaker, 03-0512, p. 5, 863 So.2d at 575.
Third, the Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Brickman, 236 La. at 175, 107 So.2d at 434. This Court held that: "[T]he authority to reduce a penalty can only be exercised if there is insufficient cause." Whitaker, 03-0512, p. 4, 863 So.2d at 575 (citing Branighan v. Dept. of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978)). Further, a legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan, 362 So.2d at 1221. The Commission may not merely substitute its judgment for the appointing authority's judgment. Whitaker, 03-0512, p. 5, 863 So.2d at 576.
Fourth, in making decisions regarding civil servant discipline, "the Commission *734 should give heightened regard to the appointing authorities that serve as special guardians of the public safety and operate as quasi-military institutions where strict discipline is imperative." Id. at 576.
Fifth, a reviewing court should not reverse a commission's conclusion as to the existence or absence of cause for discipline unless the decision is arbitrary, capricious or an abuse of the commissioner's discretion. Jones v. La. Dept. of Highways, 259 La. 329, 338, 250 So.2d 356, 359 (1971); Konen v. New Orleans Police Dept., 226 La. 739, 749, 77 So.2d 24, 28 (1954). "Arbitrary or capricious" means there is no rational basis for the action taken by the Commission. Whitaker, 03-0512, p. 2, 863 So.2d at 574 (citing Bannister v. Dept. of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647).
Finally, an appellate court's standard of review is established by the constitutional rule that the commission's decision is subject to review on any question of law or fact. La. Const. art. X, § 12. Accordingly, a court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding whether to affirm the commission's factual findings. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The court shall make its own findings of fact by a preponderance of the evidence based on its review of the record; however, due deference should be given to an agency's determination of credibility issues where the court does not have the opportunity to judge the credibility of the witnesses by first-hand observation. La. R.S. 49:964 G(6); EOP New Orleans, L.L.C. v. La. Tax Comm'n, 01-2966, p. 5 (La.App. 1 Cir. 8/14/02), 831 So.2d 1005, 1008.
The appellants argue that the appointing authority failed to prove by a preponderance of the evidence that their failure to return by September 22, 2005 impaired the efficient operation of the fire department. The fact that they did not return by that date, standing alone, is not sufficient. There was no evidence presented to demonstrate that Fire Department failed to complete tasks, could not communicate or failed to effectively carry on its duties.
The appointing authority argues that it may show that an employee's action is prejudicial to the public service by demonstrating a rational basis for the discipline imposed. It claims that it provided proof, through the testimony of Superintendent Charles Parent and other supervising personnel, that the Fire Department needed every experienced fire dispatcher available for duty. The fact that volunteers from other jurisdictions were in New Orleans to help is of no moment because the Fire Department needed its own employees for dispatching and to relieve the firemen who remained on duty. Because of the firemen that did not return timely, the personnel who stayed or returned were forced to work extensive overtime.
Although we agree that the evidence presented by the appointing authority would be sufficient under normal circumstances to impose the discipline handed down in this case, the circumstances affecting the City of New Orleans and its residents immediately following Hurricane Katrina were monumentally abnormal.
Mr. Fuller testified that he was on duty at the time the storm struck, and was evacuated from his flooded firehouse to Baton Rouge. He testified that Chief Bruce Martin told him that he was "on his own" at that point. Mr. Fuller specifically asked Chief Martin if that meant not to return to duty, and was told that only *735 Suppression[2] was being let into the City. Mr. Fuller called his wife, who had evacuated with their three children to Dallas, to pick him up in Baton Rouge. He testified that he continuously called and text messaged Chief Martin to no avail. He also called the City's line to leave his name and contact information, but no one ever called him back. Mr. Fuller stated that he attempted to return to the City as Hurricane Rita approached, but was told via cell phone by a fellow dispatcher on duty that he (Mr. Fuller) would not be able to enter the City. Finally, after Hurricane Rita passed, Mr. Fuller rented a car one-way and drove back on September 30.
Ms. Newsome was on vacation at the time the storm struck and was not due back to work until September 14. She testified that she evacuated with her daughter and grandson to Atlanta. Ms. Newsome was contacted by a fellow dispatcher on September 9 and told to call a department number set up to collect contact information for employees. She called for a week, but was only able to leave messages. She then contacted another fellow employee on September 14, who put her in touch with Tom Levy, the assistant supervisor of fire communications. She told Mr. Levy that she would be able to return to work the following Tuesday or Wednesday. He told her to return when she could.
Before Ms. Newsome began her drive back to New Orleans, she spoke with another dispatcher by cell phone and was told that the City was being shut down because of Hurricane Rita's approach. Once the threat of Hurricane Rita passed, Ms. Newsome left her daughter, who was already enrolled in school in Atlanta, with friends, drove her grandson to his mother in Houston, then stopped in Baton Rouge for inoculations. She finally arrived in New Orleans on September 29. Even after returning and reporting to work, Ms. Newsome was not aware of the September 22 "drop dead" date, until she was charged.
The Civil Service Commission recognized the unprecedented personal crises created by Hurricane Katrina, but voted to uphold the suspensions. It found the September 22, 2005 deadline to be reasonable and imposed uniformly. We disagree.
The setting of the deadline was certainly reasonable; however, to apply it uniformly to all employees is not reasonable. Every person in and around this City during the onslaught of Hurricanes Katrina and Rita is aware that communications, especially by cell phone, were practically non-existent. This Court also notes that the record does not reveal when the commanding officers decided to impose September 22 as the "drop dead" "end of the grace period" date. Although both Mr. Fuller and Ms. Newsome had limited contact with co-workers, none of them conveyed the cut off date to Mr. Fuller or Ms. Newsome. In our opinion, these two firefighters, both with unblemished disciplinary records, did the best they could under horrific circumstances to return to work as quickly as possible. To apply an across-the-board deadline for return was arbitrary and capricious.
Accordingly, we reverse the decision of the Civil Service Commission upholding the suspensions.
REVERSED.
NOTES
[1] The two appeals were consolidated at the lower level.
[2] The Suppression Unit is presumably the actual fire fighters, while Communications or Fire Alarm is the dispatch unit. Both Ms. Newsome and Mr. Fuller are dispatchers.