EDWIN A. LOMBARD, Judge.
hThe Appellant, Miochi Sumling, seeks review of the decision of the Civil Service Commission upholding her termination by the Appellee, the City of New Orleans. Finding that the Civil Service Commission erred in upholding the discipline imposed by the Appellee, we reverse in part and affirm as amended the decision of the Civil Service Commission.
Ms. Sumling was a permanent classified employee of the Department of Health of the City of New Orleans (“the City”) working as a medical assistant at Health Care for the Homeless (“the Clinic”). On January 23, 2012, Ms. Sumling attended a pre-termination hearing with Patrice Williams, the Executive Director of the Clinic, and Charlotte Parent, the Assistant Deputy Director of the Department of Health. On the same date, Ms. Sumling also received a termination letter, informing her that her termination was effective as of January 23, *103 2012.[1] The correspondence from the City notified her that a pre-termination hearing was conducted on that morning related to continued incidences occurring between December 27, 2011 and January 8, 2012,[2] regarding Code of Conduct Standard I-_jCustomer2 Service/Courtesy/Respect and Standard II-Job Performance outlined in the City of New Orleans Health Department Employee Manual. Moreover, the letter cited the following violations:
• exam rooms not properly set up to receive new patients;
• incomplete charts;
• lab work ordered and not drawn or not documented; and
• referrals not sent to referring physicians in a timely manner.
The letter goes on to state that there had been several other incidences over the past year where her medical assistant responsibilities were not completed, including documented incidences of a verbal warning on June 6, 2011, and a suspension on August 3rd and 4th, 2011, for a job performance incident.[3]
Subsequently, Ms. Sumling appealed her termination to the Civil Service Commission (“the Commission”), which assigned the appeal to a hearing examiner pursuant to Article X, Section 12 of the Louisiana Constitution of 1974. A hearing was held on April 18, 2012, before the hearing examiner, who considered the testimony of seven (7) witnesses. On behalf of the City, the following witnesses testified: Nurse Practitioner Jennie Robinson; Dr. Roberta Berrien, the Medical Director of the Clinic; Patrice Williams, the Executive Director of the Clinic; and Charlotte Parent, the Assistant Deputy Director of the Department of Health. Additionally, Ms. Sumling testified as well as two former co-workers in her | ¡^support: Pequitta Raymond and Willie Mae Martin, the former Executive Director of the Clinic.
The hearing examiner, in his report, recommended that Ms. Sumling’s appeal be denied finding that she was disciplined for cause. The Commission adopted the hearing examiner’s recommendation in its October 26, 2012 decision and upheld the termination. Ms. Sumling sought rehearing, but her request was denied by the Commission. Ms. Sumling timely filed the instant appeal and raises three (3) assignments of error:
1. The Commission’s failure to provide her with a copy of the hearing examiner’s report prior to the issuance of its decision violated her right to due process.
2. The Commission’s decision, that the Department proved legal cause for discipline, should be reversed as it is manifestly erroneous.
3. The Commission’s decision upholding her termination should be modified.
“The appointing authority (the employer of an employee in the classified civil service) is charged with the operation of his or her department and it is within *104 his or her discretion to discipline an employee for sufficient cause.” Lapene v. Dep’t of Police, 11-0902, p. 3 (La.App. 4 Cir. 1/25/12), 81 So.3d 998, 1000, citing Joseph v. Dep’t of Health, 389 So.2d 739, 741 (La.App. 4 Cir.1980). “Legal cause exists for disciplinary action of an employee in the classified civil service whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Id. [citations omitted].
“The appointing authority has the burden of proving the impairment by a preponderance of the evidence.” Id. at pp. 3-4, 81 So.3d at 1000 (citations omitted). Moreover, “[t]he Civil Service Commission has a duty to decide | independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether punishment imposed is commensurate with the dereliction.” Id. at p. 4, 81 So.3d at 1000, citing Walters v. Dep’t of Police of New Orleans, 454 So.2d 106 (La.1984).
In Lapene, we held that an appellate court should affirm the Commission’s conclusions as to the . existence or cause for dismissal of a permanent employee when the decision is not arbitrary, capricious, or an abuse of the Commission’s discretion. Id. [citations omitted]. Additionally, we have noted that “[t]he decision of the Civil Service Commission is subject to review on any question of law or fact upon appeal to this Court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review.” Ferris v. Dep’t of Police, 13-0202, p. 2 (La.App. 4 Cir. 11/20/13), 129 So.3d 801, 802 [citation omitted]. When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. George v. Dep’t of Fire, 93-2421, p. 4 (La.App. 4 Cir. 5/17/94), 637 So.2d 1097, 1101 [citations omitted]. The Commission’s findings of fact cannot be manifestly erroneous where there are two permissible views of the evidence. Id.
FIRST ASSIGNMENT OF ERROR
In her first assignment of error, Ms. Sumling argues that the Commission’s failure to provide her with a copy of the hearing examiner’s report prior to the issuance of its decision violated her right to due process, as this Court previously held in Barquet v. Dep’t of Welfare, 620 So.2d 501, 506 (La.App. 4th Cir.1993).
Ms. Sumling argues that pursuant to Louisiana Constitution Art. X, § 8 of the Louisiana Constitution, U.S.C.A. Const. Amend. 14, she had a property right in her employment which she could not be deprived of without due process of law as a ^classified employee. She alleges that the hearing examiner who presided over her April 2012 hearing and subsequently presented a report to the Commission, failed to fully assess the credibility of the witnesses who testified in his report, as required in Cartwright v. Dep’t of Revenue and Taxation, 442 So.2d 552, 554 (La.App. 1st Cir.1983). She alleges that the hearing examiner’s report was superficial and incomplete as it was only a two-page summary of a 135-page record. The following is a list of omissions that Ms. Sumling contends made the report deficient: 1.) failing to mention all of the persons who testified; 2.) failing to describe the testimony of the person who decided to terminate her; 3.) neglecting to remind the Commission that the suspension appeal was still pending; 4.) failing to mention the lack of evidence of any harm or prejudice to the clinic or patients; 5.) failing to point out the allegations that the Department had failed to prove with any sworn testimony or contemporaneous documentation; and 6.) failing to evaluate any factors rele *105 vant to determining the appropriateness of the discipline’s severity.
She avers that the hearing examiner’s report misled the Commission, which relied heavily upon the findings of the hearing examiner. The Commission’s decision, she argues, adopted verbatim the wording of the report with the Commission’s addition of an introduction and the insertion of legal standards.
Ms. Sumling maintains that the Commission would have benefited from her input about the incompleteness of the report. However, she was unable to alert the Commission to the deficiencies of the report because, pursuant to Civil Service Rule II, Sec. 4.14, she did not receive a copy of the report until after the Commission made its decision.
|fiMs. Sumling argues that she was clearly prejudiced because the Commission decided the case based on the incomplete and superficial guidance of the hearing examiner’s report, which was not subject to input from the parties. She notes that she had the right to ask for rehearing and did request that the Commission reconsider its decision. Moreover, she contends that the Commission’s cursory denial of her rehearing request evidences that the Commission did not substantively consider her arguments.
Ms. Sumling relies heavily upon our decision in Barquet. In Barquet, the plaintiff argued that the City’s practice of keeping the hearing examiner’s report entirely secret not only violated Art. X, 12[4], but also his due process rights under both the Louisiana and U.S. Constitutions. Our Court, she argues, agreed with the plaintiff and held that “[fjailure to provide a copy of the hearing examiner’s report to the parties clearly violated Barquet’s right to due process.... A copy of the hearing examiner’s report shall be a part of the record and be provided to all parties in a reasonable time prior to a decision by the Commission.” Id. at 506.
Here, Ms. Sumling contends that she was precluded from bringing the deficiencies of the report to the Commission’s attention. As a result of the report being provided ex parte to the Commission members, who decided her case, she argues that she was deprived of a truly fair hearing. Thus, she maintains that we 17should follow our holding in Barquet, and find that the City violated her right to due process by failing to provide her with a copy of the hearing examiner’s report pri- or to the Commission making its decision.
We find that Ms. Sumling’s reliance upon Cartwright and Barquet is misplaced. The holding of the First Circuit in Cartwright is not binding upon this Court. Moreover, it is evident that the hearing examiner had to have weighed the credibility of the witnesses in reaching his ultimate recommendation to the Commission. Furthermore, in Barquet, we held that the “[fjailure to provide a copy of the hearing examiner’s report to the parties clearly violated Barquet’s right to due process.” Barquet, 620 So.2d at 506. Our court further held that “[a] copy of the hearing examiner’s report shall be a part of the *106 record and be provided to all parties in a reasonable time prior to a decision by the Commission.” Id. The plaintiff in Barquet sought a copy of the hearing examiner’s report because it was not provided to the parties at all, even though the Commission considered the report when it considered his appeal. Id.
In the matter sub judice, Ms. Sumling acknowledges that Civil Service Rule II, Sec. 4.14[5] currently states that a hearing examiner’s report shall only be | sfurnished to the parties after the Commission has rendered its decision. Additionally, when Barquet was rendered, as Ms. Sumling also recognizes, former Rule II, Sec. 4.13[6] provided that only “an official transcript of the employee appeal hearings,” as well as any exhibits, constituted the official record whereas presently the hearing examiner’s report is also included in the official record.[7] We cannot apply Barquet’s holding involving an outdated Civil Service Rule to the facts of the instant case. e
The Civil Service Rules were followed by the hearing examiner and the Commission in this instance. We recognize that Ms. Sumling does not argue that the Sec 4.14, Rule II violates her due process rights, but rather its application violated her due process rights as a result of the alleged deficiency of the hearing examiner’s report. The brevity of the report does not evidence that the hearing examiner did not consider all of the testimony presented. Even if the report at issue was incomplete, however, the Commission had the benefit of the full record prior to making its decision. Indeed, the Commission in its decision states that it “reviewed a copy of the transcript and all documentary evidence.” Furthermore, Ms. Sumling’s due process rights were not violated where she had the opportunity to seek rehearing, which she availed herself of, from the Commission’s decision. Thus, we find that this assignment of error is without merit.
InSECOND AND THIRD ASSIGNMENTS OF ERROR
We address jointly Ms. Sumling’s remaining assignments of error wherein she argues that the Commission’s finding that legal cause for discipline was proven by the Department was in error as well as its decision to uphold her termination.
Our Supreme Court has reasoned that appellate courts “must evaluate the commission’s imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion.” Mathieu v. New Or *107 leans Pub. Library, 09-2746, p. 5 (La.10/19/10), 50 So.3d 1259, 1262-63 [citations omitted and emphasis added]. “ ‘Arbitrary or capricious’ means there is no rational basis for the action taken by the Commission.” Fuller v. Dep’t of Fire, 07-0369, p. 4 (LaApp. 4 Cir. 9/19/07), 968 So.2d 731, 734 [citations omitted]. Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (LaApp. 4th Cir.1990).
Regarding legal cause, Ms. Sumling argues that the Commission’s decision, that the Department proved legal cause for discipline, should be reversed as manifestly erroneous because it is not supported by findings of fact nor does it have a rational basis. She argues that the Commission’s decision merely summarizes some testimony and ends with a conclusion that is factually and legally insufficient. She reiterates her assertion that the Commission’s decision is a barely modified version of the hearing examiner’s alleged deficient report. She further contends that the Commission makes no factual findings on the specific | ^allegations ⅛ the termination letter and fails to include any assessment of witness credibility.
The Commission’s decision lacks a rational basis, she argues, because it does not contain findings of fact to support the decision. She further avers that the Commission’s “conclusion” contains implied finding of fact(s), which are not legally sufficient, and reflects that the Commission considered evidence beyond the specific incidences listed in the termination letter, which would have been improper. She argues that upholding her termination based on the “conclusion” comments would also be manifestly erroneous.
By failing to make specific factual findings on the allegations in the termination letter, the Commission violated its duty to base a decision solely on the specific allegations made in the disciplinary notice. She relies upon Montgomery v. Dep’t of Streets, 593 So.2d 1352 (LaApp. 4th Cir. 1992), in arguing that the purpose of the notice requirement is based on the constitutional duty of the appointing authority to inform the employee in detail of charges, and also to limit subsequent proceedings to those charges. She contends that her undisputed explanations for her behavior were ignored by the Commission.
She argues that the evidence only established that at one time she: forgot to pull down exam-table paper; unintentionally slammed a door while rushing to tend to another patient; and failed to fax non-emergency referrals because she was following her clinic director’s orders to leave her regular work and prepare the clinic for painting. Thus, she maintains that her actions did not provide a rational basis for termination of employment.
Regarding the testimony contained in the record, she argues that the Commission glossed-over the testimony of Jennie Robinson and Charlotte Parent. | nThe Commission failed to address that only one nurse practitioner, Ms. Robinson, out of four, at the Clinic, expressed a problem with her. The Commission, she argues, did not consider that Ms. Robinson was a new employee and nurse practitioner, who Ms. Sumling alleges was more concerned about her job status than having patients wait while Ms. Sumling prepared the exam table. Moreover, she alleges, the Commission ignored the testimony of the Assistant Deputy Director, Charlotte Parent, who emphasized the importance of progressive discipline when deciding to fire Ms. Suml-ing at the request of Ms. Williams. Ms. Parent also emphasized in her testimony *108 that an earlier suspension of Ms. Sumling was an important factor in her decision to terminate Ms. Sumling. However, Ms. Sumling argues that the Commission did not note that it had recently reversed Ms. Sumling’s August 2011 suspension. Lastly, she maintains that the Commission ignored the failure of the Department to prove any policy violations, or any harm.
Ms. Sumling argues that the Department of Health failed to meet of burden of proof that the conduct complained of impaired the efficiency of the public service in a “real and substantial” manner. Citta-dino, 558 So.2d at 1315. Thus, she avers that the Commission’s decision affirming the Department’s termination is manifestly erroneous and should be reversed.
The City argues that the Commission rendered its decision affirming Ms. Suml-ing’s termination after a thorough review of the record. The Commission considered the testimony of Ms. Williams as the Executive Director, when she testified as to the corrective steps taken to improve Ms. Sumling’s performance, but to no avail. The Commission, the City argues, carefully weighed its decision and is allowed to credit the testimony of one or more witnesses over that of other witnesses. Thus, the Commission’s decision cannot be arbitrary or capricious.
| 12As previously explained, the Commission’s conclusion as to the existence of legal cause should not be reversed unless the decision is arbitrary, capricious or an abuse of the commissioner’s discretion. Fuller, 07-0369, p. 4, 968 So.2d at 734 [citations omitted]. “ ‘Arbitrary or capricious’ means there is no rational basis for the action taken by the Commission.” Id. [citations omitted]. Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino, 558 So.2d at 1315.
In the instant matter, three witnesses testified as to Ms. Sumling’s work performance: Jennie Robinson (“Ms. Robinson”), Dr. Roberta Berrien (“Dr. Ber-rien”), the Medical Director of the Clinic, and Patrice Williams (“Ms. Williams”), the Executive Director of the Clinic.
Ms. Robinson is a nurse practitioner who works full-time at the Clinic. She explained that her job performance is affected by Ms. Sumling’s because she writes orders which she gives to Ms. Suml-ing as well as giving charts to her. She further testified that Ms. Sumling was not her subordinate, but that she would request that Ms. Sumling, as a medical assistant, perform certain work-related duties. She testified that Ms. Sumling’s work performance as “overall poor” and Ms. Suml-ing had exhibited disrespectful behavior towards her.
She explained that on December 29, 2011, while setting-up to examine a patient she asked Ms. Sumling to prepare the examination bed, which did not have paper pulled over it. Ms. Robinson left the patient in the examination room in order to call Ms. Sumling into the room to prepare the examination table. Ms. Sumling allegedly entered the room, quickly pulled the paper down and slammed the door as she exited the room, which startled Ms. Robinson and the patient.
1 iaMs. Robinson further testified that later that day she questioned Ms. Sumling about the status of a patient’s “labs” that Ms. Robinson had ordered, but were not yet received. Ms. Sumling, according to Ms. Robinson, rudely responded that she was off and would not be answering any questions. Another medical assistant then aided Ms. Robinson.
Ms. Robinson documented both of the aforementioned work incidents as well as other incidents involving Ms. Sumling that *109 occurred between December 27-29, 2011. as well as on January 3, 2012, in a Memorandum to Ms. Williams dated January 19, 2012. She explained that the memorandum was meant to address problems she had with Ms. Sumling’s work performance, unprofessional behavior and disrespectful behavior toward her.[8] Ms. Robinson requested working with a new medical assistant in her memorandum. Ms. Robinson did not testify regarding other work-performance issues alleged in her January 19, 2012 memorandum, such as Ms. Sumling not completing referrals and not checking-in patients promptly.
Dr. Berrien testified that she began working directly with Ms. Sumling in November 2011, as they prepared patients for examination and followed-up on patients’ needs. While Dr. Berrien testified that Ms. Sumling’s work performance in general was not up to par, Dr. Berrien ultimately testified that during the eight-day period at issue she had taken a vacation; thus, she could not offer insight into Ms. Suml-ing’s work performance during the relevant time period.
Ms. Williams testified that she and Dr. Berrien completed a February 2011 evaluation of Ms. Sumling, wherein she received a rating of Competent. The 114report further detailed that Ms. Sumling needed improvement in teamwork, attention to detail, flexibility, and reliability with job responsibilities, and consistent tracking of services and reports. Ms. Williams further explained that the Clinic needed to improve its performance to comply with strict Federal guidelines, but personnel performance was an impediment to this goal. Ms. Williams testified that Ms. Sumling was unable to keep up with the pace of the Clinic and assist at the appropriate level.
Ms. Sumling, however, testified that she disagreed with much of Ms. Robinson’s testimony. Regarding the door-slamming incident, she explained that while the other medical assistant was still at lunch, she was checking-in two (2) patients in the afternoon. She testified that she checked in Ms. Robinson’s first patient before proceeding to wipe down the examination table, but did not pull the paper over the table because it was still wet. She explained that she forgot to pull down the paper before calling the patient. After she began checking-in the second patient, Ms. Robinson called her to return to the examination room to pull down the paper over the table. She complied with the request and closed the examination room door. Ms. Sumling admitted that she slammed the door when she closed it because she was rushing to return to the second patient. She stated that when Ms. Robinson addressed the incident with her, Ms. Robinson only discussed the paper not having been pulled down over the table and that it was not Ms. Robinson’s responsibility to pull down the examination paper. She explained that failing to pull down the paper and slamming the examination-room door were inadvertent.
Additionally, she testified that she was familiar with the allegation that some referrals, which were written on December 27th and December 28th, were not sent to the referring offices until January 3, 2012. Ms. Sumling explained that the l1ficlinic was being renovated on December 27th and December 28th and Ms. Williams requested that she (Ms. Sumling) and other staff remove items from the walls of the clinic so that the clinic could be painted *110 while the staff was out during the holidays. Ms. Sumling testified that she left the referral forms in her box until January 3, 2012, because she was preparing the clinic to be painted. She testified that none of the referrals were emergencies. When she returned to work on January 3, 2012, she sent out the referrals.
With respect to the allegation in the Corrective Action Plan that she neglected to move a waiting patient to an exam room for over an hour, Ms. Sumling explained that there was an issue with the Clinic’s newly installed electronic system that resulted in the patient waiting to be seen. She testified that although the patient had been checked-in electronically at the front desk, the new system was not showing, in the back of the office, that the patient was checked-in. She testified that she reported the glitch to Dr. Berrien. Ms. Sumling testified that this incident did not occur during the eight-day period at issue.
Regarding her job performance, Ms. Sumling testified that: 1) she performed her job well and to the best of her ability; 2) she never received a patient complaint about her work, and 3) she always followed directions and complied with her job duties. Moreover, character witnesses and former co-workers Pequitta Raymond and Willie Mae Martin, further attested to Ms. Sumling’s competency.
Ms. Williams and Ms. Parent testified regarding Ms. Sumling’s termination. Ms. Williams testified that she received a complaint about Ms. Sumling’s work as well as a memorandum from Ms. Robinson regarding Ms. Sumling. Ms. Williams testified that she recommended Ms. Sumling for release from the Clinic, but it was
|1fithe Department of Health that opted to terminate her due to a lack of available medical assistant positions within the Department.
Ms. Williams further testified that a Corrective Action Plan (supplement) was completed for Ms. Sumling because Ms. Sumling had received several verbal warnings from both herself and Dr. Berrien. She further explained that the first or original Corrective Action Plan for Ms. Sumling was created in 2010, but she composed the current Corrective Action Plan, which was a compilation of all of Ms. Suml-ing’s corrective actions. She testified that the document was created on January 23, 2012, and was presented to Ms. Parent on the same date. She explained that the purpose of a Corrective Action Plan is to: give feedback to staff and show them where they are in corrective action line. You start with a verbal. Then you go to written, suspension, and termination. This is how the department — it’s a Health Department document that we use to do that.
Ms. Williams further testified the information used to create the Corrective Action form was provided by herself, Dr. Berrien and Ms. Robinson.
In a post-termination Civil Service Annual Evaluation Report, dated February 27, 2012,[9] which Ms. Williams prepared and signed, Ms. Sumling received an overall rating of Needs Improvement. Ms. Williams explained that such as rating means:
[t]hat the person in the position was not doing their responsibilities; was not performing efficiently and they think they *111 needed to work on several areas to improve their performance and their position.
117Lastly, she testified that the only performance rating below “Needs Improvement” is “Unsatisfactory,” which leads to termination as a consequence.
Ms. Parent testified that in her capacity as the Deputy Director of the Department of Health for the City of New Orleans, she made the decision to terminate Ms. Suml-ing’s employment. She further testified that she had suspended Ms. Sumling in the past. She explained that she considered Ms. Sumling’s poor evaluations, corrective actions plan, and suspension in deciding to terminate Ms. Sumling’s employment. Ms. Parent elaborated that within the “progressive discipline continuum” implemented by the Health Department, Ms. Sumling demonstrated continuous job performance issues such that further disciplinary actions were necessary.
Our review of the record shows that only one person observed and documented her observations of Ms. Sumling during the eight-day period at issue: Ms. Robinson. No other witness on behalf of the Department of Health provided specific information about Ms. Sumling’s job performance during the relevant eight-day time period. While it is evident that there was tension between these two co-workers during said period, Ms. Robinson’s testimony does not reflect that Ms. Sumling’s job performance impeded the efficiency of the public service. Even if the Commission found Ms. Robinson’s testimony to be more credible than Ms. Sumling’s, Ms. Robinson’s testimony only evidences that on one day Ms. Sumling incompletely prepared an examination bed and did not answer a work-related question while she was off-duty. Furthermore, neither Ms. Robinson nor anyone else on behalf of the Department of Health testified that Ms. Sumling delayed executing patient referrals or delayed checking-in patients during the eight-day Intime period. Thus, Ms. Sumling’s testimony regarding these allegations is uncontradicted.
Recognizing that “cause” for termination of an employee includes conduct prejudicial to the public service involved or detrimental to its efficient operation,[10] we find that the record reflects that there was sufficient cause to discipline Ms. Sumling. However, her alleged conduct did not warrant the imposition of the most extreme level of discipline. Dismissal from permanent employment is the most extreme form of disciplinary action that can be taken against a classified or city employee. Hills v. New Orleans City Council, 98-1101, pp. 6-7 (La.App. 4 Cir. 12/9/98), 725 So.2d 55, 58, unit not considered, 99-0954 (La.4/30/99), 741 So.2d 6 [citation omitted]. While there may have been legal cause for some level of discipline against Ms. Suml-ing, the evidence presented coupled with the Department of Health’s emphasis on progressive discipline does not merit the imposition of termination based upon the record before us.
Consequently, we find that the penalty imposed by the Appointing Authority and upheld by the Commission was not commensurate with the infraction. See Walters v. Dep’t of Police of New Orleans, 454 So.2d 106 (La.1984). As the Louisiana Supreme Court recently reasoned, the Commission independently ensures the propriety of the imposed punishment:
Our review of other civil service systems within the state shows the position of *112 the commission or board reviewing the disciplinary action of the appointing authority exercises the authority to not only ensure the discipline was imposed in good faith for cause, but to independently ensure that the particular punishment imposed was proper,
h adty of Bossier City v. Vernon, 12-0078, p. 15 (La.10/16/12), 100 So.3d 301, 311.
Recognizing Ms. Sumling’s over three years of employment with the Department of Health, consistent pre-termination ratings of competency, and the recent reversal of her suspension, we find that the termination of her employment is excessive and lacks a rational basis. Thus, we vacate the penalty of termination. We order that Ms. Sumling be suspended for fourteen days and that she is to be reinstated to her medical assistant position with back pay and other benefits from February 7, 2012.
DECREE
For the forgoing reasons, the decision of the Civil Service Commission upholding the termination of employment of Miochi Sumling is modified, and she is to be reinstated with back pay and other benefits from February 7, 2012.
REVERSED IN PART; AFFIRMED AS AMENDED.
LOBRANO, J., dissents with reasons.

. The City corrected the January 23, 2012 termination letter on January 30, 2012, in order to replace incorrect dates stated for Ms. Sumling's suspensions.

. Testimony elicited at trial indicates that the Clinic was closed from Friday, December 30, 2012 thru Monday, January 2, 2012, or four days out of the eight days at issue. The Clinic reopened on January 3, 2012. Thus, the record reflects that the work dates specifically at issue are December 27-29, 2011, and January 3, 2012.

.Ms. Sumling was given a two-day suspension after being reprimanded as a result of a July 14, 2011 incident involving Dr. Roberta Berrien, the Medical Director of the Clinic. The Commission, in case No. 7900, granted Ms. Sumling’s appeal of the suspension and reversed the order of suspension.

. Louisiana Constitution Art. X, 12(B), entitled Appeal, provides:
(B) Cities. Each city commission established by Part I of this Article shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths. It may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses. The decision of a commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty calendar days after its decision becomes final.

.Currently, Civil Service Rule II, Sec. 4.14 reads:
An official transcript of employee appeal hearings shall be made by the Court Reporter appointed by the Civil Service Commission and only this transcript, its accompanying exhibits and the hearing examiner's report shall constitute the complete and official record of said hearings. (adopted March 13, 1980; amended June 10, 1982, adopted December 17, 1992, effective December 31, 1992). However, the hearing examiner’s report shall be furnished to the parties only after the Commission renders its decision in the matter. No briefs from the parties will be filed (accepted) after the expiration of twenty days following the submission of the matter for adjudication by the Commission, (adopted June 19,1995). [Emphasis added].

. Civil Rule II, Sec. 4.13 formerly read:
An official transcript of employee appeal hearings shall be made by the Court Reporter appointed by the Civil Service Commission and only this transcript and accompanying exhibits shall constitute the complete and official record of said hearings.

. See footnote 2, supra.

. The hearing examiner noted that Ms. Sumling’s disciplinary letter did not address the allegation of rudeness.

. Ms. Williams testified that the report was actually filled-out in January, but she did not specify whether it was filled-out prior to Ms. Sumling's termination. The Hearing Commission ruled that the form could not be used to justify Ms. Sumling's termination because it was generated after her termination; however, because it supported other testimony, the Commissioner allowed it into evidence.

. Lange v. Orleans Levee Dist., 10-0140, p. 14 (La. 11/30/10), 56 So.3d 925, 934 [citations omitted].