PLOTKIN, Judge.
Vivian Hills appeals a decision of the New Orleans City Civil Service Commission (“CSC”), upholding her dismissal from her position as executive secretary with the New Orleans City Council Fiscal Office. Because we find that the punishment imposed is excessive, and therefore not commensurate with Ms. Hills’offense, we remand the case to the CSC for imposition of the maximum possible penalty short of dismissal.

Facts

Ms. Hills’ dismissal stems from a May 23, 1997, altercation with a co-employee, during which Ms. Hills threw office supplies and equipment about her office. In its letter of dismissal, the appointing authority charged Ms. Hills with insubordination, unjustified and violent behavior, damage to city property, and endangering the safety of co-workers. Those charges were based on the following testimony.
First to testify at the CSC hearing was Audrey Gates, director of City Council Research. Ms. Gates explained that on May 23, 1997, she went to Ms. Hills’ office looking for Ms. Hills’ supervisor, seeking assistance in the routing of a city contract. When Ms. Gates learned that the supervisor was not in andjgthat the other person who could help her was on the phone, she directed her questions to Ms. Hills. Ms. Gates stated that Ms. Hills refused to answer her questions, so Ms. Gates left the contract on Ms. Hills’ desk, intending to return when someone was available to help her. Shortly after Ms. Gates returned to her office, which was in close proximity to Ms. Hills’, she heard Ms. Hills arguing with a co-worker and saw her throwing papers, office equipment, and a desk drawer around the office. As Ms. Gates walked back down the hallway to investigate the disturbance, Ms. Hills threw a paper tray at her. The paper tray hit Ms. Gates’ hand, breaking a blood vessel. Ms. Gates called security because she felt Ms. Hills was out of control.
Ms. Paula Huber, assistant council fiscal officer, also testifying on behalf of the appointing authority, supplemented Ms. Gates’ testimony by telling the Commission that when Ms. Gates came into the fiscal office, she was on the telephone, but that she could hear Ms. Hills and Ms. Gates conversing. When Ms. Huber’s telephone call ended, Ms. Gates walked into her office and asked for help with a contract. Just then, Ms. Hills entered Ms. Huber’s office, and told both Ms. Huber and Ms. Gates that she would not help Ms. Gates with the contract. Ms. Hills continued to complain about not wanting to do the work, at which time Ms. Huber told Ms. Hills to return to her desk. Thereafter, Ms. *57 Huber heard loud noises, and walked to Ms. Hills’ desk, where she saw her throwing supplies around the office. A metal tray which Ms. Hills threw in Ms. Huber’s direction made a hole in the wall. When Ms. Hills finished throwing things around the office, she removed a drawer from her desk and hurled it through the door of Ms. Huber’s office, narrowly missing her. Ms. Hills then began crumpling important documents and stuffing them into her waste paper basket. All efforts to calm Ms. Hills were unsuccessful. Two security officers ^escorted Ms. Hills out of the office. Ms. Huber denied provoking Ms. Hills in any manner and stated that it took almost two days to clean the office of paper clips, papers, pencils, scissors, etc., after Ms. Hills’ outburst.
Lydia Glapion-Days, principal city council analyst, who was in the vicinity of the incident, stated that she heard Ms. Hills slamming objects on her desk. While she did not see Ms. Hills throwing objects, she could see objects flying from Ms. Hills’ direction. It appeared to her that Ms. Hills threw a paper tray at Ms. Gates. The incident disrupted office operations and required several hours for clean up. Employees in the area were uneasy as a result; it took a long time for things to return to normal. Ms. Glapion-Days did not see anyone provoke Ms. Hills.
Next, Ronald J. Pursell, chief of staff of the city council, told the Commission that he did not witness the incident, but came into the office after Ms. Hills’ outburst. He noticed that staff members were standing around. As he approached Ms. Hills’ desk, he noted the disarray in the office and saw Ms. Hills’ crying at her desk. When the first security officer arrived, Ms. Hills refused to leave. Upon arrival of the second officer, Ms. Hills was escorted out of the office. Ms. Hills’ behavior totally disrupted the operation of the office that day and for well into the next week in terms of clean up. Staff members were quite upset, particularly Ms. Huber and Ms. Gates. He based his decision to terminate Ms. Hills on her refusal to do work requested by her superior (insubordination); throwing items around the office (damage to city property); destruction of city records; and injury to a co-employee.
Ms. Hills testified that she had been employed by the city for 14 years and during that time received outstanding job performance evaluations. She admitted that she had a heated discussion with Ms. Gates and that she broke office ^equipment and threw papers and supplies around the office area;' however, she said she was taunted when Ms. Huber pointed her finger in her face. Ms. Hills denied intending to hit or hurt anyone and explained her behavior by stating that she was sick and upset at the time of the incident. She claimed she did not know what she was doing because she was suffering from an adverse reaction to prescription medication.[1]
In conclusion, Ms. Hills’ husband, Andrew, testified on her behalf, corroborating her testimony that she was ill on the day of the incident and on edge because of her medication. He said she complained of job stress on prior occasions but that basically she enjoyed her job.

Standard of review

This court recently summarized the law applicable to the instant case as follows:
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action except for cause expressed in writing. La. Const, art. X, § 8(A). An employee may appeal disciplinary action taken against him to the CSC. Id.; La.Rev.Stat. Ann. § 33:2424. On appeal, the CSC has a duty to decide if the appointing authority has good or lawful cause for taking the disciplinary action and, if so, whether the punishment imposed is commensurate with the offense. Walters v. Department of Police, 454 So.2d 106 (La.1984); Lentz v. Department of Police, 94-0814, p. 1 (La.App. 4th Cir.11/30/94), 646 So.2d 518, 519, writ denied, 94-3135 (La.3/10/95), 650 So.2d 1177. The appointing authority has the burden of proving by a preponderance of the evidence not only that the complained-of conduct occurred, but that it impaired the efficient operation of the governmental en *58 tity. Barquet v. Department of Welfare, 620 So.2d 501, 505 (La.App. 4th Cir.1993). In reviewing the decision in a civil service case, an appellate court “should not modify the [CSC’s] order unless it is arbitrary, capricious, or characterized by abuse of discretion. ‘Arbitrary or capricious’ means the absence of a rational basis for the action taken.” Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted).
Southall v. Sewerage & Water Board, 97-2214 at *2 (La.App. 4th Cir. 3/18/98), 714 So.2d 727, 1998 WL 130034.
The above quotation indicates that a reviewing court must determine two factors: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment imposed is commensurate with the offense. Through her sole assignment of error in this case, Ms. Hills argues that the CSC erred in failing to find that the disciplinary action taken was too severe in light of her work history and job evaluations. In other words, she claims that the punishment imposed is not commensurate with her offense.
We find merit in Ms. Hills’ arguments. Although the record evidence is sufficient to prove that the counsel fiscal office had good and lawful cause for taking disciplinary action against Ms. Hills, it is insufficient to prove that the punishment chosen — i.e. dismissal — is commensurate with the offense. The evidence shows that Ms. Hills refused to perform a job-related task and that her actions destroyed city property and documents. Additionally, she injured a co-employee and instilled fear and apprehension in others with whom she worked. Her behavior totally disrupted the orderly functioning of the City Council Fiscal Office and necessitated the expenditure of time and man power in clean up procedures. In sum, the city proved that Ms. Hills’ actions impaired the efficient operation of the public service.
However, all of the evidence presented by the City Council Fiscal Office, as detailed above, is relevant primarily to the question of whether the appointing authority had good or lawful cause for taking disciplinary action against Ms. Hills. This court has previously recognized that dismissal from permanent employment is the most extreme form of disciplinary action that can be taken against a classified or city employee. Barquet v. Department of Welfare, 620 So.2d 501 (La.App. 4 Cir.1993). The egregious nature of the offense in question is only one of several questions which should be considered by the CSC when determining whether the punishment imposed is commensurate with the offense. Other factors to be considered include the employee’s work record, as well as the employee’s previous disciplinary record.
In the instant case, the record contains no evidence of any previous disciplinary action taken against Ms. Hills, despite the fact that Ms. Hills had apparently been working in the office for some 19 years. The uncontradicted record evidence indicates that Ms. Hills’ performance evaluations were good. Ms. Hills refused to perform job duties on the day of the incident, but no evidence was presented to indicate that she consistently, or even frequently, engaged in such refusals. Moreover, both Ms. Hills and her husband testified that Ms. Hills was ill on the day of the incident; they theorize that her actions can be attributed to a reaction to medication. All things considered, dismissal is an excessive penalty for Ms. Hills’ offense.
For the foregoing reasons, the case is remanded to the CSC for imposition of the maximum penalty short of dismissal.

REVERSED-, REMANDED.

WALTZER, J., dissents with reasons.

. There was no medical evidence submitted to substantiate this explanation.