Judge Dale N. Atkins *192 Carnell Collier ("Appellant") appeals the October 27, 2017 judgment of the Civil Service Commission ("CSC") denying his appeal of his termination from his permanent, classified employment at the Sewerage and Water Board of New Orleans. While we agree with the CSC's finding that legal cause existed for taking disciplinary against Appellant, because we find that the punishment imposed - termination - was not commensurate with the offense, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
Appellant was a classified, permanent employee who worked as a Quality Assurance and Safety Inspector ("QASI") in the Networks Division of the Sewerage and Water Board of New Orleans ("S & WB") at all times relevant to this matter. A QASI is a senior-level position in the Networks Division, and Appellant supervised approximately fifty employees at the time of the alleged misconduct.
The record reflects that on September 6, 2015, Appellant engaged in gambling in a building referred to as the "Labor Shack" on S & WB property. At the time of the incident, approximately sixty current and former S & WB employees were gathered in the Labor Shack to celebrate the retirement of a co-worker. The events of September 6, 2015 came to light when an anonymous letter and pictures were sent to Appellant's Supervisor, Engineering Division Manager Steve Bass ("Bass"). Based upon his review of the letter and pictures, Bass believed that Appellant was gambling on S & WB property, at a party attended by S & WB employees, several of whom Appellant supervised. According to his testimony, on October 24, 2015, Appellant was called into Bass's office to address a separate disciplinary incident, involving Appellant's unauthorized use of a S & WB vehicle to haul personal trash, as well as the gambling incident. Subsequently, he received a 48-day suspension for the unauthorized vehicle use infraction.[1]
On February 4, 2016, the S & WB conducted a pre-termination hearing related solely to the gambling infraction presided over by Bass.
A notice of the hearing had been issued to Appellant via certified mail, although he apparently did not receive it. He did receive a call from Bass on February 3, 2016, during which Bass notified Appellant that the pre-termination hearing was scheduled for the following day. The purpose of the pre-termination hearing was to provide Appellant an opportunity to respond to the allegation he had been gambling with other S & WB employees, on S & WB property, during a party attended by numerous S & WB employees. Appellant acknowledged that, prior to the pre-termination hearing, he was notified of the allegations against him as well as the contemplated level of *193 discipline.[2]
At the hearing, Appellant initially denied gambling at the retirement party. However, when presented with photographs of himself gambling at the event, Appellant acknowledged his actions. Bass offered Appellant an opportunity to respond to the allegations or provide any documents or evidence relevant to the allegations, and Appellant requested time to provide a written statement, which was granted. Appellant submitted a statement later that day, in which he acknowledged that he participated in an illegal act, but asked Bass and S & WB Executive Director Cedric Grant ("Grant") to take into account his twenty-one years of dedicated service when deciding on Appellant's discipline.
Following the hearing, the S & WB terminated Appellant's employment effective Wednesday, February 24, 2016, in accordance with Civil Service Rule IX, Section 1, for committing acts to the prejudice of the S & WB. In the termination letter, the S & WB noted that Appellant had admitted to engaging in gambling activities on S & WB property while attending the retirement party of a fellow S & WB employee, and that at the time of the misconduct, Appellant was a supervisor and the senior ranking employee; as such, his conduct set a standard for other employees.
On March 9, 2016, Appellant filed an appeal of his dismissal with the City Civil Service. On September 1, 2016, at Appellant's request, his appeal was continued while settlement was explored. Apparently unsuccessful in this regard, on June 28, 2017, an appeal hearing was held before a referee appointed by the CSC.
At the CSC hearing, Appellant again admitted to gambling with other S & WB employees at the September 6, 2015 retirement party. Appellant stated that S & WB employees frequently engaged in gambling while on S & WB property and he did not view the dice game as unusual or a violation of S & WB policy. Appellant also stated that he noticed a S & WB employee at the retirement party taking pictures. This employee allegedly referred to his photos as a "get out of jail free card." On cross-examination, Appellant acknowledged that the employee taking pictures was one of his subordinates.
Appellant stated that he had received positive performance evaluations during the course of his career at the S & WB. He further claimed that he did not have an adequate opportunity to present his version of events during the course of the pre-termination hearing and that the S & WB had prohibited him from contacting any fellow S & WB employees. Appellant contended that if given the chance, he would have introduced documents and information supporting his position. However, Appellant did not specify what documents he would have introduced if given the opportunity to do so. Furthermore, Appellant admitted that he probably would not have *194 called any witnesses at the pre-termination hearing to support his case.[3]
On October 17, 2017, the CSC rendered its judgment denying the appeal. The instant appeal to this Court followed. While not designating any formal assignments of error, on appeal, Appellant argues that he was terminated without sufficient cause, because the S & WB failed to prove that Appellant's actions impaired the efficient operation of the agency. Appellant also argues that because no one had previously been terminated for gambling, and there was no specific rule addressing gambling by S & WB supervisors on S & WB property, his termination was arbitrary. Finally, he argues that termination was incommensurate with the level of his infraction.
APPLICABLE LAW
An appointing authority may discipline an employee with permanent status in the classified service for sufficient cause expressed in writing. LA. CONST. ART. X, § 8 (A). If an employee believes that an appointing authority issued discipline without sufficient cause, the employee may appeal to the CSC. Id. In an appeal before the CSC brought pursuant to Article X, § 8(A) of the Louisiana Constitution, the appointing authority has the burden of proving, by a preponderance of the evidence: 1) the occurrence of the complained of activity; and 2) that the conduct complained of impaired the efficiency of the public service in which the appointing authority is engaged. Fulton v. Dep't of Police , 2017-0523, p. 4 (La. App. 4 Cir. 12/6/17), 234 So.3d 107, 110, writ denied , 2018-0016 (La. 2/23/18), 237 So.3d 515 (quotations omitted). If the CSC determines that the appointing authority has met its initial burden and had sufficient cause to issue discipline, it must then determine if that discipline "was commensurate with the infraction." Abbott v. New Orleans Police Dep't , 2014-0993, p. 7 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 197 (citing Walters v. Dep't of Police of City of New Orleans , 454 So.2d 106, 113 (La. 1984) ).
*195 The decision of the CSC "is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review." Cure v. Dep't of Police , 2007-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (citing LA. CONST. ART. X, § 12 ). "In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion." Id. , p. 2, 964 So.2d at 1094-95. A decision of the CSC is "arbitrary and capricious" if there is no rational basis for the action taken by the CSC. Id. , 964 So.2d at 1095.
DISCUSSION
1. It is undisputed that Appellant engaged in the alleged misconduct.
In the present case, the CSC determined that Appellant engaged in gambling while attending a retirement party located on S & WB property. The CSC also found that gambling on City-owned property is serious misconduct regardless of whether it is specifically prohibited by the Louisiana Revised Statutes. The CSC further found that Appellant occupied a senior-level supervisory role within the Networks Division of the S & WB and was responsible for administering training to S & WB employees regarding proper safety procedures. Accordingly, the CSC concluded that the S & WB met its burden of establishing that Appellant engaged in the misconduct alleged in the disciplinary notice.
Our review of the record, including the hearing testimony and exhibits, supports this finding. Given Appellant's admissions, there is no dispute that Appellant engaged in the misconduct alleged by the S & WB. Furthermore, there is no dispute that at the time of the misconduct, Appellant was employed as a QASI, a high-level position within the S & WB in which he supervised numerous S & WB employees and was responsible for training numerous others. As well, Appellant admitted that employees subordinate to him attended the party.
2. The misconduct had a negative effect on S & WB operations.
3. The discipline imposed was incommensurate with the offense.
Finally, we review the question whether the discipline imposed, termination, was commensurate with Appellant's infraction. Upon consideration of all of the circumstances in this case, we find that while the record provides a rational basis for the S & WB to take disciplinary action against Appellant, it does not provide a rational basis for the CSC's holding that termination was an appropriate disciplinary action commensurate with Appellant's offense. When a decision of the CSC lacks a rational basis, it is considered "arbitrary and capricious." Cure , 2007-0166, p. 2, 964 So.2d at 1095.
Termination from permanent employment is the most extreme form of disciplinary action that can be taken against a classified or city employee. Honoré v. Dep't of Pub. Works , 2014-0986, p. 16 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1131 (citing Hills v. New Orleans City Council, 1998-1101, pp. 6-7 (La. App. 4 Cir. 12/9/98), 725 So.2d 55, 58 ) ). "Cause that may justify some other lesser form of disciplinary action may not necessarily justify a dismissal." Id. In determining whether a punishment is commensurate with the infraction, the CSC considers the nature of the offense, as well as the employee's work record and previous disciplinary record. Hills , 1998-1101, p. 7, 725 So.2d at 58.
Consequently, we find on the record before us that there is no rational basis to conclude that Appellant's infraction is deserving of the most extreme level of discipline possible. Accordingly, we find that the CSC erred when it affirmed the termination and remand for the determination of a lesser disciplinary action.
REVERSED AND REMANDED
Appellant appealed this decision to the CSC in docket number 8492; the CSC upheld the discipline on January 18, 2017. The CSC Decision and Order was admitted as an exhibit in the instant case.
Following the conclusion of the hearing on Appellant's CSC appeal, the S & WB introduced the pre-termination notice and proof of transmission via certified mail. The CSC's referee accepted the document as proof that the S & WB attempted to notify Appellant of the pre-termination meeting in writing prior to the hearing itself. However, as noted by the CSC in its judgment, for unknown reasons, the Post Office was unable to deliver the certified correspondence to Appellant. The CSC accepted the notice and related documents as proof that the S & WB made a good faith effort to notify Appellant of the pre-termination hearing in writing. We note that Civil Service Rule IX, § 1.2 requires that appointing authorities hold pre-termination hearings prior to effectuating an employee's termination and notify the employee of the allegations and contemplated discipline. The Rule does not require that the notice be in writing.
At the outset of the CSC hearing, Appellant's counsel raised an issue regarding the lack of any response by the S & WB to a request for the production of documents, which apparently had been misdirected. As a result, the S & WB was not aware of the request until shortly before the appeal hearing. Through the requested documents, Appellant intended to introduce exhibits related to his job performance, disciplinary history, and the S & WB's approach to misconduct similar to the type Appellant allegedly perpetrated. Following the hearing, Appellant requested that the record be left open solely for the pre-termination notice documents, which were subsequently provided and admitted (see supra note 2). Appellant has advanced no argument on appeal that the record is incomplete.