**ROY NEELY**         *        **NO. 2021-CA-0454**

**VERSUS**        *

**DEPARTMENT OF FIRE**        *        **COURT OF APPEAL**

       **FOURTH CIRCUIT**

       *

       **STATE OF LOUISIANA**

       * * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9210, ""
Honorable Jay Alan Ginsberg, Hearing Officer
* * * * * *
**Judge Terri F. Love**
* * * * * *
(Court composed of Chief Judge James F. McKay, III, Judge Terri F. Love, Judge
Tiffany Gautier Chase)

Louis L. Robein
ROBEIN, URANN, SPENCER, PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002

Laura K. Cline
ROBEIN, URANN, SPENCER, PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002


       COUNSEL FOR PLAINTIFF/APPELLEE


Michael J. Laughlin
ASSISTANT CITY ATTORNEY
1300 Perdido Street
City Hall - Suite 5E03
New Orleans, LA 70112

Elizabeth S. Robins
DEPUTY CITY ATTORNEY
1300 Perdido Street
City Hall - Suite 5E03
New Orleans, LA 70112

Churita H. Hansell
CHIEF DEPUTY CITY ATTORNEY
1300 Perdido Street
City Hall - Suite 5E03
New Orleans, LA 70112

Donesia D. Turner
SENIOR CHIEF DEUPTY CITY ATTORNEY
1300 Perdido Street
City Hall - Suite 5E03
New Orleans, LA 70112

Sunni J. LeBeouf
CITY ATTORNEY
1300 Perdido Street
City Hall - Suite 5E03
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**DECEMBER 1, 2021**

*TFL*

*JFM*

*TGC*

In this civil service case, firefighter Roy Neely was terminated by the New Orleans Fire Department ("NOFD") for refusing to participate in a mandatory substance abuse screening procedure following an on-the-job accident. After the accident, Mr. Neely submitted to a breathalyzer test, which he passed, and then provided a urine sample. The urine sample was outside of the acceptable temperature range and a second observed sample was required. Mr. Neely was unable to provide urine in an observed collection, despite drinking fluids and making three attempts to provide a sample. The Civil Service Department advised Mr. Neely and NOFD that it deemed this to be a positive result of the screening procedure.

In a subsequent pre-termination hearing, NOFD terminated Mr. Neely for refusing to participate in the substance abuse screening procedure, per Civil Service Rule V, Section 9.4. Mr. Neely appealed his termination to the Civil Service Commission (the "Commission"). The Commission found that NOFD failed to carry its burden of showing good or lawful cause to terminate Mr. Neely,

1

and, even if cause existed, NOFD failed to show that termination was commensurate with the offense. The Commission also determined that Mr. Neely failed to receive due process in the disciplinary procedure. The Commission granted Mr. Neely's appeal and reinstated him with back pay and other emoluments of office. NOFD filed this timely appeal.

Upon review, we find that NOFD violated the applicable standards for the substance abuse screening procedure and that Mr. Neely's behavior did not constitute a refusal to participate in the procedure. We find that because the complained of misconduct did not occur, it did not impair NOFD's efficient operations and termination was not reasonable discipline. Lastly, we hold that because NOFD predetermined the outcome of Mr. Neely's pre-termination hearing, Mr. Neely was deprived of a meaningful opportunity to be heard. Therefore, we affirm the Commission's judgment.

**FACTUAL AND PROCEDURAL HISTORY**

On September 1, 2020, at approximately 10:46PM, Mr. Neely was driving a rescue unit vehicle out of Fire Station 7. As the vehicle exited the station, it struck the overhead door, causing damage to the door. Mr. Neely's District Chief ordered a post-accident substance abuse test, as required by Civil Service Rule V, Section 9.13. The test was administered by Jeffrey Mendler, the owner of Toxicology and Drug Analysis Laboratory ("TDAL"). TDAL contracts with the City of New Orleans to provide substance abuse collection and testing. The contract is managed by the Civil Service Department.

2

Mr. Mendler first administered an alcohol breath test to Mr. Neely at 11:45PM, with a negative result from Mr. Neely. Next, Mr. Mendler requested an unobserved urine sample of Mr. Neely, which Mr. Neely provided at 11:55PM. Mr. Mendler inspected the urine sample and detected it to be out of the acceptable temperature range. Mr. Mendler proceeded to discard the first unobserved sample and requested an observed sample, as required by the testing protocol. Mr. Mendler advised Mr. Neely that, per the protocol, he would be given up to three hours to provide a second sample and would be offered up to forty ounces of fluids to facilitate a second sample. Mr. Neely drank over fifty ounces of fluid in that time and made three observed attempts to provide urine, but did not produce urine before the three hour time limit expired. Mr. Mendler filled out an "Unusual Collection Form" and recorded the outcome of Mr. Neely's attempts to provide urine as a "shy bladder." On the form, Mr. Mendler checked a box next to "Specimen Temperature Out of Range," indicating that the first specimen was out of the acceptable temperature range. Mr. Mendler checked a box stating, in part:

> Donor Left the Office, Refused Observed Collection or Refused to Give a Valid Sample after being advised that:
> - First specimen will be discarded.
> - I will be allowed to drink up to 40 ounces of fluid distributed evenly over a three (3) hour period, or until I have provided a sufficient urine specimen, whichever comes first.
> - If at any point during that three (3) hour period I feel that I am able to provide an adequate specimen, I will notify a staff member.
> - If I cannot provide an adequate specimen within (3) hours from my first attempt, the collection process will be discontinued and my employer / prospective employer will be notified.
> - I have been instructed not to leave the testing site during this period. I understand that failure to remain at the testing site until the testing process is complete will be considered a refusal.

3

Above the first bullet, Mr. Mendler wrote in "EXHAUSTED 3 HOUR TIME LIMIT." Mr. Neely initialed that text, signed the sheet at the bottom, and returned to work to complete his shift. Mr. Mendler sent the form and accompanying paperwork to his contact in the Civil Service Department, characterizing the procedure as a refusal to test.

Beginning the next afternoon, Mr. Neely contacted the Deputy Chief of Safety and Investigations, Terry Hardy, multiple times to attempt to discuss the incident. Mr. Neely declares that he did so with the intention of arranging for another substance abuse test. There is no record of Deputy Chief Hardy responding to him on that subject. On September 7, 2020, NOFD Superintendent Timothy McConnell issued a Notification of A Suspension and Pre-Termination Hearing to Mr. Neely, informing him that he was immediately suspended due to a refusal to participate in a substance abuse test, in violation of Civil Service Rule V, Section 9, and that a hearing would take place on September 9, 2020. On September 8, the Civil Service Department issued a letter to Mr. Neely and NOFD enclosing "a copy of the positive test results" of the comprehensive substance abuse screening. The letter quoted an excerpt from Civil Service Commission, Rule V, Section 9.4:

> Refusal to participate in the substance abuse screening procedure, or failure to undergo the screening procedure at the time and place designated for testing, or tampering with or attempting to adulterate the sample, shall be considered to be presumptive evidence of the individual's inability to pass the substance abuse testing procedure.

The letter continued to state, in relevant part:

> In view of the serious nature of these test results, a representative of your Appointing Authority will be in contact with you in the very near

4

future, to discuss the appropriate course of action to remedy this situation.

Per Civil Service Rules, after having failed to successfully complete the substance abuse screening procedure, to be considered for employment with the City, an applicant must submit documentation of their successful completion of a certified treatment program and continuing participation in an aftercare program.

If you wish to be considered for future employment with the City of New Orleans, you must submit documentation of your successful completion of a certified treatment program and continuing participation in an aftercare program."

On that same day, Mr. Neely undertook an unobserved drug test, at his own expense, at an Ochsner Urgent Care facility and received a negative result. Mr. Neely presented the test results during the pre-termination hearing. Deputy Chief Hardy conducted the hearing. On September 25, 2020, Superintendent McConnell issued a letter to Mr. Neely informing him that he was terminated from employment with NOFD for his refusal to participate in a substance abuse screening procedure, in violation of Civil Service Rule V, Section 9, Substance Abuse Testing. The letter stated that Mr. Neely did not provide any credible explanation for his refusal to participate. The termination letter also explained that the agency relied on the substance abuse screening form and the letter from the Civil Service Department in reaching its conclusion.

Mr. Neely appealed his termination to the Civil Service Commission. A hearing took place on November 18, 2020. On May 24, 2021, the Commission granted Mr. Neely's appeal and reinstated him with all back pay and other emoluments of office, finding that NOFD failed to carry its burden of showing good or lawful cause to terminate Mr. Neely. The Commission further found that

5

even if cause existed, NOFD failed to show that termination was commensurate with the dereliction complained of. Last, the Commission determined that Mr. Neely failed to receive due process. It is from this decision that NOFD presently appeals.

**DISCUSSION**

*Standard of Review*

Civil Service Commission decisions are "subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located." La. Const. art. X, § 12. That review is multifaceted, and, in reviewing factual findings, appellate courts "should apply the clearly wrong or manifest error rule." *Walters v. Department of Police of City of New Orleans*, 454 So. 2d 106, 113-14 (La. 1984). Appellate courts review procedural decisions of the Commission "under our traditional plenary function of insuring procedural rectitude" and examine questions of law *de novo*. *Byrd v. Department of Police*, 12-1040, p. 10 (La. App. 4 Cir. 2/6/13), 109 So. 3d 973, 980 (citing *Walters*, 454 So. 2d at 113-14).

However, while an appointing authority is "charged with the operation of his or her department and it is within his or her discretion to discipline an employee," employees who achieve permanent status in the civil service system may only be subject to disciplinary action for sufficient cause. *Pope v. New Orleans Police Dept.*, 04-1888, pp. 6-7 (La. App. 4 Cir. 4/20/05), 903 So. 2d 1, 4-5; La. Const., art. X, § 8(A). Legal cause to terminate an employee exists if the employee's

6

conduct impairs the efficient operation of the appointing authority. *Evangelist v. Department of Police*, 08-1375, p. 3 (La. App. 4 Cir. 9/16/09), 32 So. 3d 815, 818 (quoting *Cittadino v. Dept. of Police*, 558 So. 2d 1311, 1315 (La. App. 4th Cir. 1990)). The appointing authority bears the "burden of proving, by a preponderance of the evidence that the complained-of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority." *Cure v. Department of Police*, 07-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So. 2d 1093, 1094 (*citing Marziale v. Department of Police*, 06-0459, p. 10 (La. App. 4 Cir. 11/8/06), 944 So. 2d 760, 767).

When the Commission or a court of review evaluates cases involving the termination of permanent employees, neither "should 'second-guess' an appointing authority's decisions." *Byrd*, 12-1040, p. 10, 109 So. 3d at 980 (citing *Lange v. Orleans Levee District*, 10-0140, p. 17 (La. 11/30/10), 56 So. 3d 925, 936). In these cases, a "reviewing court should not reverse a Commission conclusion as to the existence or absence of cause for dismissal, unless the decision is arbitrary, capricious or an abuse of the Commission's discretion." *Whitaker v. New Orleans Police Dept.*, 03-0512, p. 3 (La. App. 4 Cir. 9/17/03), 863 So. 2d 572, 574 (citing *Jones v. Louisiana Department of Highways*, 250 So. 2d 356, 359 (La. 1971); *Konen v. New Orleans Police Department*, 77 So. 2d 24, 28 (La. 1954)). A decision is arbitrary or capricious if there is an "absence of a rational basis for the action taken." *Bannister v. Department of Streets*, 95-0404, p. 8 (La. 1/16/96), 666

7

So. 2d 641, 647 (citing *Shields v. City of Shreveport*, 579 So. 2d 961, 964 (La. 1991)).

*Assignment of Error #1*

In its first assignment of error, the appellant asserts that the Commission abused its discretion by determining that NOFD did not demonstrate that the misconduct for which Mr. Neely was terminated was, in fact, misconduct and occurred.

The appellant, as the appointing authority, bore the burden of proving that the misconduct occurred. *Cure*, 07-0166, p. 2, 964 So. 2d at 1094. In its letter of termination to the appellee, the appellant stated that the appellee was terminated for his refusal to participate in a mandatory substance abuse screening procedure, which is considered presumptive evidence of a positive test result and a violation of Civil Service Rule V, Section 9. In concluding that the appellee's actions constituted a refusal to test, the appellant explicitly relied on the September 8, 2020 letter from the Civil Service Department. This approach was confirmed by Superintendent McConnell during the Civil Service Commission hearing. Superintendent McConnell testified that because the Civil Service Department deemed the appellee's behavior to be a refusal to test, the appellant was compelled to accept that finding as a foregone conclusion.

Personnel Director Lisa Hudson of the Civil Service Department testified that the Department determined that the appellee refused to take the test based on the report from Mr. Mendler. Personnel Director Hudson stated that if a situation

8

is "black-and-white," the Department will rely on the report of the certified tester and have a staff member process the letter. However, Personnel Director Hudson also stated that if the situation is not "black-and-white," staff members alert the Director and the Department will investigate further. The Director acknowledged that, while her staff had not alerted her to this incident, under these conditions, the Department would normally "dig a little deeper." These admissions by Personnel Director Hudson lead us to find that the Civil Service Department improperly relied wholesale on the conclusions of Mr. Mendler in categorizing the appellee's conduct as a refusal to test, without any further analysis.

In conducting the substance abuse screening procedure, Mr. Mendler was obligated to act in accordance with the Civil Service Rules, La. R.S. T. 49, Ch. 14, and federal Substance Abuse and Mental Health Services Administration Mandatory Guidelines for Federal Workplace Drug Testing Programs ("SAMHSA") guidelines, per the contract specifications within Amendment 1 to the Agreement between the City and TDAL and La. R.S. 49:1005. Neither the Civil Service Rules, nor the Revised Statutes define a "refusal" to test. La. R.S. 49:1001; Civil Service Rule I, Definitions. The Revised Statutes require that testing generally "be performed in compliance with the SAMHSA guidelines," but does not address specific procedures to implement in the case of employees who do not provide a second sample after an initial out-of-range sample. La. R.S. 49:1005(B). Similarly, the Civil Service Rules do not outline specific procedures to follow for employees who do not provide a second sample.

*Contract Specifications*

The contract specifications state that "[i]f a medical condition makes it impossible to produce a urine specimen, Contractor upon request will collect a hair or blood sample for testing." The appellant argues that the appellee presented no evidence of a medical condition that would have warranted a request from the Civil Service Department for a hair or blood sample test. The appellant also asserts that Mr. Mendler's description of appellee's "shy bladder" is not a diagnosis of a medical condition because Mr. Mendler is not a medical practitioner. The appellant further contends that no medical condition was alleged by the appellee. However, it is unclear how the appellant concluded that a medical condition did not exist, if no medical practitioner reviewed the appellant's test result.

*SAMHSA Guidelines*

The SAMHSA guidelines state that:

"As a donor for a federally regulated drug test, you have refused to take a federally regulated drug test if you:
(1) Fail to appear for any test (except a pre-employment test) within a reasonable time, as determined by the federal agency, consistent with applicable agency regulations, after being directed to do so by the federal agency;
(2) Fail to remain at the collection site until the collection process is complete with the exception of a donor who leaves the collection site before the collection process begins for a pre-employment test as described in section 8.4(a);
(3) Fail to provide a specimen (*e.g.,* urine or another authorized specimen type) for any drug test required by these Guidelines or federal agency regulations with the exception of a donor who leaves the collection site before the collection process begins for a pre-employment test as described in section 8.4(a);
(4) In the case of a direct observed or monitored collection, fail to permit the observation or monitoring of your provision of a specimen when required as described in Sections 8.9 and 8.10;

(5) **Fail to provide a sufficient amount of urine when directed, and it has been determined, through a required medical evaluation, that there was no legitimate medical explanation for the failure as determined by the process described in Section 13.6;**

(6) Fail or decline to participate in an alternate specimen collection (*e.g.,* oral fluid) as directed by the federal agency or collector (*i.e.,* as described in Section 8.6);

(7) Fail to undergo a medical examination or evaluation, as directed by the MRO as part of the verification process (*i.e.,* Section 13.6) or as directed by the federal agency. In the case of a federal agency applicant/pre-employment drug test, the donor is deemed to have refused to test on this basis only if the federal agency applicant/pre-employment test is conducted following a contingent offer of employment. If there was no contingent offer of employment, the MRO will cancel the test;

(8) Fail to cooperate with any part of the testing process *(e.g.,* refuse to empty pockets when directed by the collector, disrupt the collection process, fail to wash hands after being directed to do so by the collector);

(9) For an observed collection, fail to follow the observer's instructions related to the collection process;

(10) Bring materials to the collection site for the purpose of adulterating, substituting, or diluting the specimen;

(11) Attempt to adulterate, substitute, or dilute the specimen;

(12) Possess or wear a prosthetic or other device that could be used to interfere with the collection process; or

(13) Admit to the collector or MRO that you have adulterated or substituted the specimen.

Mandatory Guidelines for Federal Workplace Drug Testing Programs, 82 Fed. Reg. 7920-01, §1.7 (Oct. 1, 2017) (emphasis added).

Pursuant to these standards, contractors are instructed to discontinue urine collection if the donor "has not provided a sufficient specimen (*i.e.,* at least 45 mL) within three hours of the first unsuccessful attempt to provide the specimen."

Mandatory Guidelines for Federal Workplace Drug Testing Programs, 82 Fed. Reg. 7920-01, §8.5(f)(2)(iii). The contractor must note the reason for not collecting a urine specimen, notify the agency's designated representative for authorization of an alternate specimen to be collected, and send copies of the collection form to the Medical Review Officer ("MRO") and the agency's

designated representative. *Id.* Additionally, the SAMHSA guidelines state that agencies are free to enact a standard protocol for testing contractors to follow for alternate collections instead of seeking authorization in each case that might require an alternate specimen.[1] *Id.* If the agency did not authorize collection of an alternate specimen, the MRO consults with the agency and the "agency immediately directs the donor to obtain, within five days, an evaluation from a licensed physician, acceptable to the MRO, who has expertise in the medical issues raised by the donor's failure to provide a specimen." Mandatory Guidelines for Federal Workplace Drug Testing Programs, 82 Fed. Reg. 7920-01, §13.6.

SAMHSA guidelines required Mr. Mendler to at least notify a Civil Service Department staff member for authorization to collect an alternate specimen, which he did not do. The appellant argues that although the option for an alternate specimen existed, there was no obligation for it or the Civil Service Department to authorize such a specimen. However, although the appellant and the Civil Service Department were not obligated to authorize collection of an alternate specimen, in those cases, §13.6 of the SAMHSA guidelines requires a medical evaluation to determine whether there was a legitimate medical reason that could justify the insufficiency of the sample. *Id.* Only after the MRO or another qualified

---

[1] The comments reveal that in drafting updates to the guidelines, a commenter requested that immediate alternate collections be made mandatory, to avoid additional costs associated with medical evaluations of "shy bladder" that would otherwise be necessary. Instead, the Department gave agencies the authority to decide whether to implement a standard protocol requiring an immediate alternate specimen, or to decide on a case-by-case basis whether to request an alternate specimen. This commentary illustrates a collective understanding that a "shy bladder" is a condition requiring further evaluation.

physician conducts an exam to determine that no medical condition exists, can the donor's behavior be categorized as a refusal to test. *Id.*

Analyzing these guidelines together, it is evident that the appellee's conduct did not characterize a refusal to test. He appeared for the test, underwent and passed the first portion of it, stayed on the premises for the duration of the test, drank more than the minimum amount of fluid to facilitate urination, made three observed attempts to provide a sample, and expressed a willingness to undergo additional testing when he was unable to provide a second specimen. The appellee believed that he would have an opportunity to provide an alternate specimen, and when one was not requested, he paid for an additional test himself. The appellant failed to follow the mandatory testing protocol set forth in SAMHSA by not requesting an alternate sample or ordering a medical evaluation, and incorrectly concluded that the appellee's behavior constituted a refusal to test.

### DOT Regulations

The appellant asserts that the DOT Regulations do not apply to this contract. However, the contract specifications contain a provision stating that in the apparent absence in the specifications of any detail, or the apparent omission of a detailed description concerning any point, the best professional practices will prevail. During the November 18, 2020 hearing, Mr. Mendler asserted that although city employees are not covered under the DOT regulations, he relied upon the regulations as a best practice, describing them as the "gold standard to try to follow

13

… for all collections … yes, we follow those same guidelines as best we can the whole way through."

The definition of a refusal to test under the DOT Regulations is equivalent to the definition under SAMHSA. 49 C.F.R. § 40.191 (2010); Mandatory Guidelines for Federal Workplace Drug Testing Programs, 82 Fed. Reg. 7920-01, §1.7. The failure to provide a sufficient amount of urine is only deemed a refusal when "it has been determined, through a required medical evaluation, that there was no adequate medical explanation for the failure." 49 C.F.R. § 40.191(a)(5). As under SAMHSA guidelines, if an employee does not provide a sufficient amount of urine within three hours of the first unsuccessful sample, the contractor must "immediately notify the DER" (Designated Employer Representative). 49 C.F.R. § 40.193(b)(4). The DER "must, after consulting with the MRO, direct the employee to obtain, within five days, an evaluation from a licensed physician, acceptable to the MRO, who has expertise in the medical issues raised by the employee's failure to provide a sufficient specimen." 49 C.F.R. § 40.193(c). Significantly, the DOT Regulations explicitly contemplate that a "shy bladder" is a condition warranting a physician's evaluation, stating that "[a]s a referral physician (e.g., physician evaluating a "shy bladder" condition or a claim of a legitimate medical explanation in a validity testing situation), you must notify the MRO, who in turn will notify the DER." 49 C.F.R. § 40.191(d).

Under both the SAMHSA guidelines, which explicitly govern the substance abuse screening procedure, and the DOT Regulations, which the contractor relied

upon for best practices, the appellee's conduct cannot be construed as a refusal to test, and cannot be considered as presumptive evidence of a positive test result. Therefore, the Commission did not abuse its discretion in concluding that the appellant failed to demonstrate that the misconduct for which Mr. Neely was terminated was, in fact, misconduct and occurred.

### *Assignment of Error #2*

In its second assignment of error, the appellant asserts that the Commission abused its discretion by granting Mr. Neely's appeal, and ordering his reinstatement with back pay and emoluments of office, because NOFD demonstrated that the misconduct occurred, that it impaired the efficient operation of the NOFD, and that termination was reasonable discipline.

The appellant bore the burden of proving that the misconduct occurred, and that it "bore a real and substantial relationship to the efficient operation of the appointing authority." *Cure*, 07-0166, p. 2, 964 So. 2d at 1094 (*citing Marziale*, 06-0459, p. 10, 944 So. 2d at 767). If the appointing authority has proven that the complained of activity occurred and it had sufficient cause to discipline, the Commission then determines if the discipline was commensurate with the infraction. *Matusoff v. Department of Fire*, 19-0932, p. 4 (La. App. 4 Cir. 5/20/20), --- So.3d ----, ----, 2020 WL 2562940, *2 (citing *Abbott v. New Orleans Police Dept.*, 14-0993, p. 7 (La. App. 4 Cir. 2/11/15), 165 So. 3d 191, 197). In making that determination, the Commission "considers the nature of the offense as well as the employee's work record and previous disciplinary record." *Matusoff*,

15

19-0932, p. 8, --- So.3d at ----, 2020 WL 2562940, at *4 (citing *Hills v. New Orleans City Council*, 98-1101, pp. 6-7 (La. App. 4 Cir. 12/9/98), 725 So. 2d 55, 58).  Termination is "the most severe form of disciplinary action that can be taken by the Appointing Authority, and should be reserved for the most serious violation." *Matthews v. Department of Police*, 98-0467, p. 9 (La. App. 4 Cir. 11/18/98), 723 So. 2d 1044, 1049.

In *Matusoff*, a firefighter was terminated after testing positive for a marijuana metabolite that his doctor and pharmacist recommended as part of a treatment plan.  *Matusoff*, 19-0932, pp. 1-3, --- So.3d at ----, 2020 WL 2562940, at *1.  In terminating him, NOFD cited the City of New Orleans' Policy Memorandum No. 89, subsection X.B.5 (Revised):

> B. A first offense discharge shall be invoked if an employee commits one (1) of the following violations:
> 5. As the result of a first offense <u>confirmed</u> (MRO certified) positive test result as established by City Civil Service Rules for the use of alcoholic beverages or any of the illegal and/or unlawfully obtained (used) drugs prohibited by [sic] while working.

The firefighter appealed to the Commission, which denied his appeal for different reasons than the appointing authority had identified. This Court found that, as the agency accepted Mr. Matusoff's explanation that he tested positive due to his medical treatment, "NOFD failed to meet its burden of proving that Mr. Matusoff had either used an illegal/prohibited substance or consumed it while on duty." *Id.*, 19-0932, p. 6, --- So.3d at ----, 2020 WL 2562940, at *3.  This Court also found that the Commission abused its discretion by failing to consider the nature of the

16

offense as well as Mr. Matusoff's twelve years of experience and lack of a prior disciplinary record. *Id.*, 19-0932, p. 8, --- So.3d at ----, 2020 WL 2562940, at *4.

The appellant argues that *Matusoff* does not preclude reliance on Policy Memorandum No. 89 and its first-offense discharge mandate. The appellant submits that Policy Memorandum No. 89 expressly authorized and required the appellee's termination. However, in the instant matter, as in *Matusoff*, NOFD failed to demonstrate that the misconduct complained of occurred. As discussed in the previous section, the appellee did not refuse to participate in the substance abuse screening procedure and did not violate the Civil Service Rules. Since the offense did not occur, the appellant had no authority to rely on Policy Memorandum No. 89 for a first-offense discharge.

Consequently, the appellant fails to demonstrate how the non-occurrence of an offense by an employee impairs its efficient operation. While true that the Commission "should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative," the appointing authority in this case violated its own operational procedures. *Stevens v. Department of Police*, 00-1682, p. 8 (La. App. 4 Cir. 5/9/01), 789 So. 2d 622, 627. Had the SAMHSA guidelines been followed, an alternate specimen would have been quickly collected or a medical evaluation would have occurred within five days, thereby facilitating the agency's efficient operation.

17

Furthermore, even if the appellee was guilty of a refusal to participate in a substance abuse screening procedure, that act is only "presumptive evidence," under Civil Service Rule V, Section 9.4, of his inability to pass the test and would have required a more thorough review of the circumstances before proceeding to termination. In *Matusoff*, an actual positive test result was not found to require termination. In the instant case, the only offense the appellee committed was his failure to produce a specimen for collection under observation.

The appellee has served as a firefighter for eleven years and has no prior disciplinary record. The appellant presented no evidence of any other behavior by the appellee that would give rise to concerns of substance abuse. The testimony of Chief Hardy and Superintendent McConnell illustrate their belief that the only recourse was termination and that no further consideration was given to the context of the case. Therefore, the Commission did not abuse its discretion in granting the appellee's appeal and ordering his reinstatement because the appellant did not demonstrate that the misconduct occurred, impaired the efficient operation of the NOFD, and that termination was reasonable discipline.

*Assignment of Error #3*

In its third assignment of error, the appellant contends that the Commission abused its discretion and erred as a matter of law by determining NOFD did not afford Mr. Neely due process because it did not provide him a meaningful opportunity to be heard.

Civil service employees who achieve permanent status may only be disciplined for cause and in writing. La. Const., art. X, § 8(A). That writing should inform the employee of the charges against him or her, and the opportunity to be heard, at a meaningful time and in a meaningful manner. *Moore v. Ware*, 01-3341, pp. 12-13 (La. 2/25/03), 839 So. 2d 940, 949. The appellee, as a permanent employee, acquired a vested property right in his employment with the appellee and was entitled to due process in the disciplinary process.

In its September 7, 2020 letter to the appellee, the appellant provided notice of the charges against the appellee, and the date of a pre-termination hearing. The letter stated that the hearing would be the appellee's opportunity to present a case for why he should not be terminated and called upon him to prepare any supporting documentation and testimony as to why he should be allowed to continue employment. The letter stated that the "information you provide at the hearing will be used to determine what course of action the New Orleans Fire Department will take." Chief Hardy conducted the hearing.

However, in his Commission hearing testimony, Chief Hardy concedes that the outcome of the hearing was predetermined by the Civil Service Department's letter labeling the appellee's conduct as a refusal to test and a positive result. This concession does not comport with the testimony of the Civil Service Department Personnel Director, who acknowledged that while the appointing authority typically relies on the Department's letter, the authority retains the responsibility to conduct an investigation of the case. However, it does not appear that any such

investigation was conducted. At the time the hearing took place, the appellant had already adjudged the outcome. Additionally, the appellee neglected its duties under the SAHMSA guidelines to provide a medical evaluation or request an alternate specimen of the appellee.

Accordingly, the hearing did not provide the appellee with an opportunity to be heard in a meaningful manner and the Commission did not abuse its discretion or err as a matter of law by determining the appellant did not afford the appellee due process.

**CONCLUSION**

For the above-mentioned reasons, we hold that the Commission did not abuse its discretion in finding that the appellant failed to carry its burden of showing good or lawful cause to terminate the appellee. We further hold that the Commission did not abuse its discretion in finding that, even if cause existed, the appellant failed to show that termination was commensurate with the offense. Lastly, we hold that the Commission did not abuse its discretion or err as a matter of law by determining the appellant did not afford the appellee due process.

**AFFIRMED**